**John M. KELLY, Appellant**

v.

**MOSER, PATTERSON AND SHERIDAN, LLP; Moser IP Law Group; Barden Todd Patterson; William Bruce Patterson; Keith Tackett; Douglas Elliott; Gero McClellan; Raymond R. Moser, Jr.; Eamon J. Wall; Kin–Wah Tong; James Sheridan; Donald J. Verplancken.**

No. 08–3318.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 8, 2009.

Filed: Oct. 9, 2009.

John M. Kelly Akron, OH, for Appellant.

William H. Healey, Esq., Mandelbaum Salsburg, Red Bank, NJ, Phillip G. Ray, Esq., Mandelbaum Salsburg, West Orange, NJ, for Appellee.

Before: SCIRICA, Chief Judge, RENDELL and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

In November 2004, John Kelly was fired from the law firm Moser, Patterson & Sheridan, LLP,[1] where he worked as an "of counsel" attorney. He was fifty-two years old at the time. Kelly brought suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, alleging he was fired because of his age. The District Court granted summary judgment for defendants, and Kelly appeals.[2] We will affirm.

Kelly began working at Moser, Patterson & Sheridan as a patent lawyer in April 2003. When he was hired, Kelly was offered a choice between two compensation plans. He could be paid a fixed $180,000 annual salary or be paid based on a percentage of his services that were billed to clients. Under the percentage-of-billing plan, Kelly might have been able to earn more than $180,000 a year, but he also

1. Moser, Patterson & Sheridan, LLP, became Patterson & Sheridan, LLP, when defendant Raymond Moser left the firm to begin another law firm, the Moser IP Group.

2. In his Complaint, Kelly asserted several state-law claims: a violation of the New Jersey Law Against Discrimination (NJLAD), breach of an implied employment contract, wrongful discharge in violation of public policy, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. The NJLAD claim is governed by the same analysis as the federal ADEA claim. *See, e.g., Lehmann v. Toys 'R' Us., Inc.*, 132 N.J. 587, 626 A.2d 445, 452 (1993); *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 570 A.2d 903, 906–07 (1990); *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 827–30 (3d Cir.1994).

The District Court granted summary judgment for the defendants on the other state-law claims. Kelly challenges this determination only to the extent he contends the District Court abused its discretion by denying his motion to compel discovery. Had defendants provided complete disclosure, he claims, summary judgment would not have been proper. Based on an affidavit of the law firm's human resources director, Rhonda Marlin, the District Court determined the information sought by Kelly had already been produced or did not exist. Kelly contends Marlin would not have known whether the documents existed and that her affidavit was invalid because she was not a lawyer. Regarding the former, Kelly has not shown the District Court clearly erred, and the latter argument is meritless. The District Court did not abuse its discretion, and we will affirm the grant of summary judgment on these state-law claims.

might have earned less. Kelly had spousal and child support obligations that, he claims, prevented him from taking the risk inherent in the percentage-of-billing compensation plan. He chose the fixed salary. As such, he was expected to bill 1,850 hours annually.

Kelly's tenure at the law firm was troubled. In January 2004, less than a year after he began at Moser, Patterson & Sheridan, Kelly sued the law firm in federal court. Under a New York state-court order, the law firm was garnishing Kelly's wages to provide spousal and child support, and Kelly claimed the law firm was withholding too much money. The lawsuit was dismissed in April 2004. Kelly also failed to meet his billable hour requirements in his first year, falling short by 210 hours.[3] Also, he had several problems working with his legal secretary, Alberta Gamble. She complained of rude treatment on multiple occasions, and Kelly asked her to work on his personal matters, notably his divorce proceedings, which, Gamble claimed, interfered with her work for other lawyers. On one occasion, Kelly and Gamble had an argument at work. According to one senior lawyer, their disagreement disrupted the entire law office. Furthermore, several formal documents Kelly was working on were sent to a client with incorrect or missing information. The defendants claim these documents were sent under Kelly's signature. Kelly asserts they were sent by Gamble without his permission.

Finally, in November 2004, nVidia, a major client of the firm, complained about Kelly's work. As a result, the law firm agreed that Kelly would no longer work on nVidia matters, and it agreed to write off more than $73,000 from nVidia's bills, representing the value of Kelly's services.[4] Because he was paid on an annual salary, the law firm, not Kelly, bore the financial cost of nVidia's dissatisfaction. As Kelly explained at his deposition:

> There was a large amount of billing work I had done for nVidia. Jim Sheridan [a partner at the law firm] had to write ... off [the work] somehow because he wasn't going to bill his client for it. When he wrote it off the law firm ate it instead of me....

In a November 29, 2004, meeting, senior law firm partners Raymond Moser and Eamon Wall informed Kelly he was being fired, telling him that Jim Sheridan had received complaints about the nVidia work and had insisted his employment be terminated. Rhonda Marlin, the human resources director at the law firm, did not attend the meeting, but she spoke with Moser afterward. And she took some handwritten notes based on their conversation, which she placed in Kelly's employment file. The notes stated:

> Meeting w/ RM & EW—Mistakes on patent apps & separation agreement wouldn't sign. Not [unreadable] mishandled—
>
> older & better paid / younger & cheaper

---

3. Kelly contends several charts and graphs produced by defendants reveal some ambiguity about whether he would have met the billable-hours target had some of his time not been written off. In his deposition, however, Kelly "recognized the hours were low" and stated that he had not expected a bonus "because I was low on the hours." Kelly's own assertions in his deposition accordingly confirm that he had not met the billable-hours target.

4. Kelly contends his work on nVidia matters was satisfactory. For purposes of summary judgment, we accept his account. But Kelly does not contest that the client believed the work was subpar nor that the law firm acceded to the client's dissatisfaction by removing Kelly from matters involving the client and writing off the hours he billed to the client.

3—4 weeks.

Marlin claims she was told by Moser that Kelly himself had asserted at the meeting that the firm wanted to get rid of its "older better paid" attorneys and keep its "younger cheaper" attorneys. Kelly did not depose Marlin, Moser, or Wall, but he submitted an affidavit denying he spoke those words.

The District Court, without addressing whether Kelly could make out the prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), concluded the defendants had asserted legitimate, nondiscriminatory reasons for firing Kelly. Because Kelly could not show these reasons were pretextual, the District Court granted summary judgment for defendants.[5] Kelly contends the District Court's grant of summary judgment was improper. He claims Rhonda Marlin's handwritten note was evidence of age discrimination, sufficient to permit a jury to conclude the defendants' stated reasons for terminating his employment were pretextual.[6]

The Age Discrimination in Employment Act prohibits employers from discriminating against "any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Congress passed the ADEA to combat unfounded stereotypes that older workers are less capable than younger workers. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610–11, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Accordingly, the Act prohibits employers from "rely[ing] on age as a proxy for an employee's remaining characteristics, such as productivity." *Id.* at 611, 113 S.Ct. 1701. The ADEA requires them to "instead focus on those [non-age] factors directly." *Id.* at 611, 113 S.Ct. 1701. When decisions are based on a non-age factor, "the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age...." *Id.*; *see also id.* ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.' ").

A plaintiff may demonstrate that a legitimate factor acts as a proxy for age, with the employer "suppos[ing] a correlation between the two factors and act[ing] accordingly." *Id.* at 612–13, 113 S.Ct. 1701. But to prove a violation of the ADEA, it does not suffice to show that age played some minor role in the decision. *Gross v. FBL Fin. Servs., Inc.*, —— U.S. ——, 129 S.Ct. 2343, 2350–51, 174 L.Ed.2d 119 (2009). The plaintiff must show that age was the "but for" cause of the adverse employment action—that age had "a determinative influence on the outcome."[7] *Id.* at 2350 (*quoting Hazen Paper Co.*, 507 U.S. at 610, 113 S.Ct. 1701). And the

---

**5.** The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, and we review the facts in the light most favorable to the nonmovant, Kelly in this case. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir.2009). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [defendants are] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

**6.** Kelly also contends Marlin's note is direct evidence of discrimination, sufficient to shift the burden of proof to the defendants under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Price Waterhouse*, however, does not apply to cases under the ADEA. *See infra* note 8 and accompanying text.

**7.** "An act or omission is not regarded as a cause of an event if the particular event would have occurred without it." *Gross*, 129 S.Ct. at 2350 (citing W. PAGE KEETON ET AL., PROSSER

burden of proof remains with the plaintiff at all times. *Id.* at 2351–52 (concluding the burden-shifting framework articulated in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), does not apply to cases under the ADEA).[8]

In this case, there is more than substantial evidence that the law firm terminated Kelly's employment for non-age reasons. Kelly had a prior lawsuit against the law firm, and he had not met his billable-hours target in his first year. He had ongoing problems working with his legal secretary, including problems with the handling of client documents under his supervision. Most importantly, Kelly confirmed in his deposition testimony that the law firm terminated his employment because of nVidia's dissatisfaction with his work and the resulting loss to the law firm of more than $73,000: "As I was not on a percentage of billing plan that write off did not directly impact my income. [Moser, Patterson & Sheridan] had to eat the write-off.... [The law firm] needed a scapegoat to placate nVidia: I became it." Kelly further explained, "When [Sheridan] wrote ... off [the nVidia bills] the law firm ate it instead of me and therefore they decided to get rid of me because of my age, and I couldn't go on a percentage of billing." Accordingly, Kelly's testimony supports the law firm's assertion that it fired him because of the loss—financial and reputational—it sustained as a result of his work.

Kelly contends the firm's motivation was nonetheless age related. He claims only older attorneys were compensated on the percentage-of-billing plan, not "young kids." And Kelly asserts that as an older attorney, he was paid more and he billed at a higher rate than younger attorneys. Accordingly, the law firm's loss was greater than it would have been if he were younger. But Kelly freely chose his compensation plan. And like pension systems and seniority, compensation, though often correlated with age, is analytically distinct. *See Hazen Paper Co.,* 507 U.S. at 611, 113 S.Ct. 1701; *Broaddus v. Fla. Power Corp.,* 145 F.3d 1283, 1287 (11th Cir.1998) ("The ADEA does not prohibit an employer from making an employment decision on the basis of higher salaries, increased benefits, pension status, or claims for medical expenses even though these characteristics are often correlated with an employee's age." (*citing Hazen Paper Co.,* 507 U.S. at 611, 113 S.Ct. 1701)); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1126 (7th Cir.1994) ("Because age and ... [compensation] are analytically distinct, an employer can take account of one while ignoring the other ...." (*quoting Hazen Paper Co.,* 507 U.S. at 611, 113 S.Ct. 1701)). The law firm may have suffered a greater loss than it would have if Kelly had been paid under the alternate compensation scheme or paid less. But it is undisputed that the client's dissatisfaction with Kelly's work and the consequent financial loss, which are legitimate considerations under the ADEA, motivated the decision.

Even assuming Kelly's contention that the "older & better paid/younger & cheaper" language was not used at his termination meeting,[9] this single phrase in his

---

AND KEETON ON THE LAW OF TORTS § 41 (5th ed.1984)).

8. Because *Price Waterhouse* does not apply to cases under the ADEA, we do not decide whether Marlin's handwritten note is "direct evidence" that would place the burden of proof on defendants. *See Gross,* 129 S.Ct. at 2351–52.

9. Viewing the facts in the light most favorable to Kelly, *see Kossler v. Crisanti,* 564 F.3d at 186, we accept for purposes of summary judgment that the phrase was not used in the termination meeting.

employment file is the only evidence in this case that age may have played any role in the law firm's decision. At most it shows either that age is correlated with cost, a legitimate consideration under the ADEA, or that age was one of multiple motivations. Given the many problems Kelly created for the law firm over the prior year, including the loss it sustained as a result of his work product, no reasonable jury could conclude age played a determinative role in his termination. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

Even though unlikely, at most age was a secondary consideration in the law firm's decision, not a determinative "but for" factor. This is insufficient under *Gross.* Accordingly, Kelly cannot prove his claim under the ADEA, and we will affirm the judgment of the District Court.