In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-2836

GERALD A. JUDGE and DAVID
KINDLER,

*Plaintiffs-Appellees*,

*v.*

PAT QUINN, Governor of
the State of Illinois,

*Defendant*,

and

ROLAND W. BURRIS, U.S. Senator,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 1231—**John F. Grady**, *Judge.*

SUBMITTED SEPTEMBER 22, 2010[*]— DECIDED SEPTEMBER 24, 2010
OPINION [**]

Before ROVNER, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* In this appeal, Senator Roland Burris challenges a permanent injunction entered by the district court after our decision in *Judge v. Quinn*, 612 F.3d 537 (7th Cir. 2010) ("*Judge I*"). That injunction states that the State of Illinois will hold a special election on November 2, 2010. In that election, the people of Illinois will select a permanent replacement to fill President Barack Obama's seat in the U.S. Senate for the remainder of the 111th Congress. Because November 2 is fast approaching and in the interest of a manageable election, the district court limited the candidates who will appear on the ballot for the special election to those people who are slated to appear on the November 2 ballot in the general election to fill the six-year Senate term that will begin at the start of the 112th Congress. One practical effect of this limitation was to prevent Senator Burris, who was appointed to serve as President Obama's temporary replacement in the Senate, from participating in the special election. In this appeal, Senator Burris asks us to vacate the district court's permanent injunction. We conclude that the lower court acted well within its discretion, and we affirm its order.

**I**

We will assume familiarity with our earlier opinion, which

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

[**] This opinion is being issued in typescript; printed version to follow.

described the background of this case, and so we address here only the facts necessary to resolve this successive appeal. On June 16, 2010, we affirmed the district court's decision to deny a preliminary injunction to two Illinois voters who claimed that the Seventeenth Amendment required Pat Quinn, the Governor of Illinois, to issue a writ calling for a special election to select a permanent replacement for President Obama's former seat in the Senate. *Judge I, supra*.

Our analysis of the Seventeenth Amendment led to the conclusion that a state must hold an election each time that a vacancy occurs in its Senate delegation, so that the people of the state can elect a replacement senator. To ensure that such an election takes place, the executive officer of the state is required by the Constitution to issue a writ of election. The timing and mechanics of the special election are governed by state law, as contemplated by the Elections Clause of the Constitution and the final phrase of the Seventeenth Amendment's second paragraph. Finally, the Seventeenth Amendment permits the state legislature to empower the state executive to fill a Senate vacancy temporarily by appointment, until a special election takes place. *Judge I*, 612 F.3d at 554-55. At the time of the plaintiffs' initial appeal in this case, Governor Quinn had not issued a writ of election, and the State of Illinois took the position that Senator Burris was to serve as President Obama's replacement in the Senate until January 3, 2011. They maintained this position despite the fact that then-Governor Blagojevich's certificate appointing Senator Burris made clear that his tenure in the Senate was to last only "until the vacancy . . . is filled by election as provided by law." Accordingly, we concluded that the plaintiffs had a strong likelihood of success on the merits of their constitutional claim.

Ultimately, however, we decided that preliminary relief was not warranted because the plaintiffs failed to identify any irreparable harm that they might suffer in the absence of immediate equitable relief. We noted there was still ample time during which Governor Quinn might issue a writ of election, and we felt confident that the district court would resolve the merits of the plaintiffs' claim in a timely fashion. Because the

issue was not presented in the plaintiffs' appeal, we declined to address how the state was to decide what names should appear on the ballot for the special election. We did suggest, however, that the state might propose a solution acceptable to all parties. *Judge I*, 612 F.3d at 556-57.

Following our decision, the plaintiffs asked the district court to enter a permanent injunction ordering Governor Quinn to issue a writ of election that would call for a special election on November 2, 2010, the date specified by the Illinois Election Code, 10 ILCS 5/25-8 (West 2010). On June 23, 2010, the district court held the first of five hearings to consider the plaintiffs' request. Lawyers for the plaintiffs, Governor Quinn, and Senator Burris were present. Governor Quinn opposed the injunction, saying that a second election on November 2 would cause voter confusion, that there was too little time to prepare, and that the Illinois Election Code failed to outline any method for selecting candidates to participate. Senator Burris joined the governor's opposition. In response, the plaintiffs proposed a number of potential solutions to the purported timing and candidate-selection problems. The district court postponed its decision while Governor Quinn filed a petition in this court for rehearing.

On June 28, 2010, Governor Quinn filed his petition for rehearing and rehearing *en banc*. Among other arguments, he again asserted that it would be impossible for Illinois to prepare for a special election in compliance with the Illinois Election Code in the time remaining before November 2. The plaintiffs filed an expedited response, explaining that a November 2 special election was feasible if the state overrode the normal primary system for selecting candidates for the ballot and used a more expeditious method. We denied rehearing on July 22, at which point we amended our initial decision to make clear that

> [t]he district court has the power to order the state to take steps to bring its election procedures into compliance with rights guaranteed by the federal Constitution, even if the order requires the state to disregard provisions of state law

that otherwise might ordinarily apply to cause delay or prevent action entirely. . . . To the extent that Illinois law makes compliance with a provision of the federal Constitution difficult or impossible, it is Illinois law that must yield.

*Judge v. Quinn*, 2010 WL 2853645, at *1 (7th Cir. July 22, 2010) (unpublished order) ("*Judge II*").

Four days after that order, the district court held its fourth hearing to consider the permanent injunction. Abandoning his earlier position, Governor Quinn there acknowledged that a special election was possible. This meant that all of the parties then agreed that a primary was unnecessary. Governor Quinn proposed that the court disregard the requirements of the Illinois Election Code and limit the special election ballot to candidates who had been selected in primaries (or had collected the requisite number of signatures) and were set to appear on the November 2 general election ballot for the new, six-year Senate term. That precise procedure, the parties agreed, had been used in Illinois to select candidates for a special election to the U.S. House of Representatives following our decision in *Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970). See *Vote Set for House Vacancy*, Chicago Tribune, July 28, 1970, at 3. While the plaintiffs initially put forward a plan under which the central committees of the state's political parties would choose candidates for the special election, in accordance with the vacancy provisions of the Illinois Election Code, they made clear that they did not object to the governor's plan.

Senator Burris, however, was not satisfied. He opposed any plan that would leave him (or other interested citizens, he said) off the special election ballot. He proposed that the district court enter an injunction providing that parties who collected a limited number of signatures would also be entitled to appear on the ballot for the special election. Governor Quinn urged the court to reject that idea, arguing that an entirely novel qualifying procedure would be much too complicated to implement in the short time that remained. In response, the district court asked the parties whether they would object to its

ordering that Senator Burris should be included on the special election ballot by fiat. Senator Burris supported that proposal. But the plaintiffs noted that Senator Burris's appointment to the Senate did not give him a special claim to a spot on the ballot over any other citizen, and Governor Quinn added that the presence of Senator Burris on the list of special election candidates might cause confusion among voters if he was then absent from the list of general election candidates on the same ballot. As the hearing closed, the district judge asked Governor Quinn and the plaintiffs to return later that week with a draft injunction order. Senator Burris, still objecting to his potential exclusion, asked to submit a brief in opposition to any order, to which the court responded, "I don't need any briefs on this. But I will hear you fully when we have an order . . . . [D]on't be afraid that you won't have an opportunity to be heard."

On July 29, the district court held its fifth and final hearing. Governor Quinn and the plaintiffs arrived having reached agreement on the contours of a permanent injunction order. After a discussion about how long the state would have to certify election results, the court asked Senator Burris's attorney what right Senator Burris had to be placed on the special election ballot as opposed to any other person. The attorney responded, "I don't know that Senator Burris is suggesting that there is a right outside of the right that should be afforded to any person to have ballot access. He believes that to be a constitutional right." Senator Burris also submitted a brief in opposition to the permanent injunction, in which he argued that the district court had denied him the opportunity to be heard and threatened to violate his right to access the ballot by issuing an injunction.

The district judge decided it would adopt Governor Quinn's proposal, restricting the special election ballot to those candidates slated to run in the general election. At the same time, in Springfield, Illinois, Governor Quinn issued a writ of election. He commanded the clerks in each county "to cause a SPECIAL ELECTION to permanently fill [President Obama's vacancy] for the remainder of Hon. Obama's term to be held in the STATE OF ILLINOIS on TUESDAY, NOVEMBER 2, 2010 in

conformity with any applicable federal court orders and, to the extent feasible, with the Illinois Election Code . . . ."

On August 4, 2010, the district court entered its preliminary injunction order. In the order, the district court confirmed that the Illinois Election Code established November 2 as the date for a special election, and it found that the writ of election issued by Governor Quinn complied with the federal Constitution and Illinois law. In addition, the district court noted that it had conducted five separate hearings "to consider procedures for conducting a special election on short notice," and it recognized that "to the extent that Illinois law makes compliance with a provision of the federal Constitution difficult or impossible, it is Illinois law that must yield to the extent that it otherwise might apply to cause delay or prevent action entirely." *Judge II*. Noting that a primary election was not necessary and that candidates had to be limited to a manageable number, the court entered its order adopting Governor Quinn's candidate-selection plan. Senator Burris's appeal followed.[1]

## II

We review a district court's entry of a permanent injunction for an abuse of discretion. *e360 Insight v. The Spamhaus Project*,

---

[1] On September 3, 2010, Senator Burris filed a Motion for Stay of District Court Order and a Petition for a Writ of Mandamus in this court. Both of these represented efforts to prevent the district court's injunction from taking effect. This court denied both the motion and the petition on September 8, 2010, at which time we expedited this appeal. Senator Burris also filed an Application (No. 10A272) with Justice Breyer, in his capacity as Circuit Justice for the Seventh Circuit, seeking a stay of enforcement of the district court's judgment. On September 20, 2010, Justice Breyer denied the Application.

500 F.3d 594, 603 (7th Cir. 2007). In an election law case, "[t]he essential question . . . is whether the District Court properly exercised its equitable discretion in reconciling the requirements of the Constitution with the goals of state political policy." *Connor v. Finch*, 431 U.S. 407, 414 (1977).

Senator Burris's principal contention in this appeal is that the district court lacked the power to enter a permanent injunction defining the mechanics of the November 2 special election. This argument is split into two closely related branches: first, the Senator claims that the lower court's order concerns a nonjusticiable political question; and second, he asserts that the injunction invades the exclusive province of the Illinois state legislature, in violation of the Elections Clause and the Seventeenth Amendment. In addition to these arguments, Senator Burris takes the position that the permanent injunction interferes with his constitutional right of access to the ballot.

A

We begin with the political-question argument, for if this case presents an issue that falls within the scope of that doctrine, then we lack authority to adjudicate it. *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (citing *Luther v. Borden*, 7 How. 1 (1849)). Contrary to the plaintiffs' suggestion, it makes no difference whether Senator Burris raised this argument before the district court; it affects our jurisdiction and cannot be forfeited.

The political-question doctrine "identifies a class of questions that either are not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh, . . . or have been committed by the Constitution to the exclusive, unreviewable discretion of the executive and/or legislative – the so-called 'political' – branches of the federal government." *Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior*, 255 F.3d 342, 347 (7th Cir. 2001). The Supreme Court's decision in *Baker v. Carr* sets out the now-familiar factors that, if present, suggest that a political question exists:

[A] textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962). Importantly, the *Baker* Court added that "[t]he doctrine . . . is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." *Id.* Senator Burris suggests that several of the considerations *Baker v. Carr* identified as tending to reveal a political question are present in his case. In our view, however, the only ones that require closer attention are whether there is a lack of judicially manageable standards for implementing the special election or if the conduct of that election is entirely committed to the political branches.

With respect to the first of those issues, both history and constitutional text show that this case is not one where reasonable people might disagree about the availability of judicially manageable standards. But compare *Vieth v. Jubelirer*, 541 U.S. 267 (2004), and *Davis v. Bandemer*, 478 U.S. 109 (1986). The Seventeenth Amendment supplies a concrete rule requiring an election to fill each Senate vacancy. The district court turned to state law, past practice in Illinois, and recent primary election results to establish the timing of the required special election and a fair slate of candidates to participate. Nothing that the court did in order to bring Illinois's election procedures into line with the Seventeenth Amendment was beyond its capacity.

Similarly, this case does not involve an issue committed to the exclusive discretion of one of the political branches. Senator Burris takes the view that, because the Constitution commits to the Illinois legislature the job of defining the mechanics of a vacancy election, the federal district court has no institutional role to play. But a long line of decisions from the Supreme Court demonstrate that he is wrong. The Court has said that "[w]hen challenges to state action respecting matters of the administration of the affairs of the State and the officers through whom they are conducted have rested on claims of constitutional deprivation which are amenable to judicial correction," federal courts may act to address the merits of those claims. *Baker*, 369 U.S. at 229 (internal quotation marks and footnote omitted). Indeed, the Court repeatedly has held that a federal court may correct constitutional wrongs in areas generally within the purview of state lawmakers, and it has applied this principle to the area of elections. In addition to *Baker*, *supra*, see *William v. Rhodes*, 393 U.S. 23, 28 (1968) ("[The state's] claim that the political-question doctrine precludes judicial consideration of these cases requires very little discussion. That claim has been rejected in cases of this kind numerous times."); *Bond v. Floyd*, 385 U.S. 116, 130 (1966) ("The State does not claim that it should be completely free of judicial review whenever it disqualifies an elected Representative; it admits that, if a State Legislature excluded a legislator on racial or other clearly unconstitutional grounds, the federal judiciary would be justified in testing the exclusion by federal constitutional standards.") ; *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) ("[O]nce a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan."); *Wesberry v. Sanders*, 376 U.S. 1, 6-7 (1964) (noting that "nothing in the language of [the Elections Clause] gives support to a construction that would immunize state congressional apportionment laws which debase a citizens right to vote from the power of courts to protect the constitutional rights of individuals from legislative destruction"); *Gomillion v. Lightfoot*, 364 U.S. 339, 344-345 (1960)

(striking down municipal boundaries that impaired voting rights and concluding that "[l]egislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution"). As we noted in *Judge II,* where state action (or, as here, inaction) infringes rights guaranteed by the federal Constitution, the federal courts have the power to hear cases and fashion remedies to redress the constitutional wrong.

B

Senator Burris next asserts that the district court usurped the constitutional role of the Illinois General Assembly when it decided how candidates should be selected for the special election and set a deadline for certifying election results. The phrase "as the legislature may direct," which concludes the second paragraph of the Seventeenth Amendment, U.S. CONST. amend. XVII, para. 2, affirms that the Amendment was not intended to disrupt the allocation of power established by the Elections Clause of the Constitution to dictate the terms of elections. See U.S. CONST. art. I, § 4, cl. 1. *Judge I,* 612 F.3d at 552-54; see also *Newberry v. United States,* 256 U.S. 232, 252 (1921). Accordingly, "State law controls the timing and other procedural aspects of vacancy elections. The Elections Clause obliges the state to make these rules, and the final phrase of the Seventeenth Amendment's second paragraph reaffirms this role." *Judge I,* 612 F.3d at 554. Notwithstanding these authorities, Senator Burris maintains that the district court's order offends the Constitution.

As an initial matter, Senator Burris failed to raise this argument before the district court. And this argument, unlike the justiciability claim we discussed above, can be forfeited. A party who fails to present an argument in the trial court forfeits the position on appeal, unless we choose to entertain it "in the interests of justice." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 391 (7th Cir. 2007). In this case, we see no reason to take this unusual step. In the district court, Senator Burris was perfectly content with the district court's power to fashion an order dictating what candidates would participate in the

November 2 special election, so long as he was included among those candidates. He asked the district court to implement a signature-gathering mechanism that would allow him to earn a place on the ballot; and, when that idea failed, he encouraged the court to add him to the ballot by virtue of the fact that he was the temporary appointee. Not once in the five hearings before the injunction issued did Senator Burris argue that the district court lacked the authority to establish a slate of candidates, and his written objections to the injunction, submitted on July 29, do not mention this point either. This court will not overturn an injunction based on an argument not presented to the district court, *Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 308-09 (7th Cir. 2010), and there is no good reason to make an exception in this case, where Senator Burris took a position in the lower court that is the opposite of the one he advances here.

Even if Senator Burris had not forfeited the argument, he would be no better off. Our previous discussion of the political-question doctrine amply demonstrates the power of the district court to fashion an equitable remedy in this case. In the face of a constitutional violation, it makes no difference that both the Elections Clause and the final phrase of the Seventeenth Amendment's second paragraph assign primary responsibility to the states for controlling the timing and other procedural aspects of vacancy elections. The same can be said of countless other areas in which, once a constitutional violation has been proven, federal courts have the power to issue remedial orders tailored to the scope of the constitutional violation. See, *e.g., American Trucking Ass'n, Inc. v. Smith,* 496 U.S. 167 (1990) (state taxation); *Hutto v. Finney*, 437 U.S. 678 (1978); *Milliken v. Bradley,* 418 U.S. 717, 744-45 (1974) (school desegregation); *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) (school desegregation); *Brown v. Board of Education*, 349 U.S. 294, 299-300 (1955). As Governor Quinn recently pointed out in his opposition to a stay of the district court's order in the Supreme Court, "Once the appellate court . . . determined that the Seventeenth Amendment required . . . an election, it was impossible to hold the election in the manner set forth by the

Illinois legislature. In that circumstance, the district court was required to remedy the constitutional violation perceived by the Seventh Circuit, something that was unquestionably within the court's power." Memorandum of Governor Pat Quinn in Opposition at 16, *Burris v. Judge, et al.*, No. 10A272 (U.S. Sep. 17, 2010) (citing *Smith v. Robinson*, 468 U.S. 992, 1012 n.15 (1984)).

C

With respect to Senator Burris's final argument, we can be brief. Senator Burris contends that the district court's order, which was designed to remedy a violation of the Seventeenth Amendment, unconstitutionally blocks not only his access to the ballot but also that of any others who might be interested in running in the special election. In support of this argument, Senator Burris lists a number of cases where the Supreme Court has struck down ballot access restrictions as violating the Equal Protection Clause, the First Amendment guarantee of freedom of association, and the Qualifications Clause of Article I, Section 3. See *Williams v. Rhodes*, 393 U.S. 23 (1968), *Anderson v. Celebrezee*, 460 U.S. 780 (1983), and *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), respectively. But apart from alleging generally that his exclusion from the November 2 special election violates the Constitution, Senator Burris gives no indication about which provisions of the Constitution he is relying on or how his exclusion has caused the violation. We have repeatedly reminded litigants, especially those represented by counsel, that compliance with Rule of Appellate Procedure 28 requires more than "a generalized assertion of error." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); see also *Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008). Senator Burris's claim that he has been unconstitutionally denied access to the ballot leaves us with very little to evaluate.

For the sake of completeness, however, we observe that the Supreme Court has explained that the effect of ballot access restrictions on candidates always has a correlative effect on the field of candidates among whom voters might choose. *Anderson*, 460 U.S. at 786. When analyzing candidate restrictions, we are "'to examine in a realistic light the extent and nature of their impact on voters.'" *Id.* (quoting *Bullock v.*

*Carter*, 405 U.S. 133, 143 (1972)). For example, restrictions pose a problem if they keep political parties off the ballot, *Williams*, 393 U.S. at 31, interfere with political expression, *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 186 (1979), or force indigent candidates to pay fees they cannot afford, *Lubin v. Panish*, 415 U.S. 709, 718 (1974).

At the same time, however, candidacy itself is not a fundamental right, and the Court has held "that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (quoting *Bullock*, 405 U.S. at 143). "[N]ot all restrictions imposed . . . on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates. . . . '[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). In this case, two considerations lead us to the conclusion that the district court's order does not run afoul of the Court's guidance on ballot-access restrictions. First, nothing in the permanent injunction excludes a particular class or group of candidates in a manner that suggests that an identifiable group of voters will be left out of the special election. Second, and more importantly, the district court's order is narrowly tailored to address only one occasion; it will have no effect on future elections in Illinois.

As we have already noted, the district court drew on a procedure used in this circuit after *Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970), to define the mechanics of the special election required by the Constitution. Senator Burris attempts to derive a constitutional violation from the district court's effort to balance a constitutional requirement, state election law, and the need to supply a remedy in an expeditious fashion. But far from being an additional constitutional error, the district court's effort did nothing more or less than vindicate constitutional rights in light of the real-word consequences of the necessary relief. See *Weinberger v. Romero-*

*Barcelo*, 456 U.S. 305, 312 (1982). The district court had discretion to limit the special election participants to names already on the general election ballot in order to avoid other problems, both constitutional and practical, that might have arisen if the special election were left wide open. *Cf. Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004) (approving a district court's refusal to enter an injunction that would have interfered with an already-scheduled election). Finally, the district court's remedy, which relies on candidates selected pursuant to the Illinois Election Code, was designed to be, and probably is, the most democratic and constitutionally sound approach the district court could have devised.

### III

Senator Burris has asked us to vacate the district court's permanent injunction on the ground that it is the job of the Illinois legislature, not the federal courts, to establish election procedures that ensure that the seat once held by President Obama in the U.S. Senate is filled in a manner that complies with the Seventeenth Amendment. Putting to one side the fact that the plaintiffs brought suit to compel Governor Quinn and others to act when they refused to do so, Senator Burris now concedes that the consequence of granting him the relief he seeks is that no special election will take place at all in light of the complexity of the administrative steps needed to prepare for the election. He says this is normal, pointing to our observation in *Judge I* that nearly 15% of the almost 200 vacancies in the last century have been filed without a vote of the people. But this statistic provides no support for Senator Burris's position. To the contrary, it demonstrates that too often the requirements of the Seventeenth Amendment have been ignored. Well-established principles of equity require courts to consider, among other factors, the balance of hardship between plaintiff and defendant and the effect that the injunction would have on the public before granting equitable relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In this case, the balance of hardships favors the plaintiffs, who – along with the rest of the citizens of Illinois – will see their Seventeenth Amendment rights vindicated in a special election. For Senator

Burris, it means only that he will finish his temporary appointment in the Senate two months earlier than he may have expected. In an exceedingly short time, the district court considered the arguments of all sides, forged agreement between the parties, and reached a solution to bring the Illinois election machinery into line with the federal Constitution. The district court is to be congratulated for the fine job it did, under extreme time pressure, in resolving this case.

The district court's order is AFFIRMED.