In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3754

HOWARD FLEISHMAN,

*Plaintiff-Appellant,*

*v.*

CONTINENTAL CASUALTY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09-cv-00414—**Edmond E. Chang**, *Judge*.

ARGUED SEPTEMBER 18, 2012—DECIDED OCTOBER 18, 2012

Before FLAUM, SYKES, and TINDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. After working for Continental Casualty Company ("Continental") for nearly twenty years, Howard Fleishman suffered a brain aneurism that required him to intermittently miss work from 2003 to 2005. Following his medical problems, he continued to work on workers' compensation claims as a staff attorney and was assigned to a new group that handled high-value cases. Unfortunately for Fleishman, his supervisor began receiving a series of performance-related

complaints that ultimately led to his termination in 2007 at the age of fifty-four. Fleishman filed suit under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), alleging that Continental discriminated against him because of his age and a disability stemming from the aneurism. The district court granted Continental's motion for summary judgment, and we affirm. Fleishman offers no evidence of age discrimination and does not meet the definition of disabled under the ADA.

## I. Background

Howard Fleishman began working for Continental Casualty Company in 1984 as a trial attorney defending workers' compensation claims. David Izzo oversaw the attorneys in Continental's Chicago staff counsel office, including Fleishman. Izzo reported to Jacqueline Johnson, who oversaw all of Continental's staff counsel offices. Beginning in 2003, Fleishman suffered a series of medical problems related to a brain aneurism. As a result, he took intermittent medical leaves between July 2003 and June 2005. In the midst of these treatments, Izzo mentioned to Fleishman that his numbers "were off" because he was out on leave. Izzo inquired whether Fleishman thought about retirement and, if so, that Izzo would make sure he received severance. Fleishman declined and did not request another leave or accommodation after his June 2005 return, although he now had a noticeable dent on the side of his head and could no longer drive.

In early 2005, Continental created the Major Case Unit ("MCU") to handle high-exposure claims and assigned Fleishman to the new group. He remained in the staff counsel office overseen by Izzo, but Fleishman prepared reports for adjusters in the MCU aimed at minimizing Continental's costs and exposure. Early in the assignment, Nanette Husnik, a claims manager in the MCU, received complaints from adjusters about Fleishman's work. In mid-2005 and, upon receiving additional complaints, again in 2006, Husnik relayed these complaints to Izzo and Johnson, both of whom confirmed the legitimacy of the concerns regarding Fleishman. Fleishman's critics were not limited to the MCU either, as claims specialist Rina Patel requested that Izzo transfer all of her work from Fleishman to another staff attorney in the office in March 2006. Izzo informed him of these concerns, and on one occasion Johnson expressed similar dissatisfaction to Fleishman.

These issues represented a change of course for Fleishman, who had performed his job duties adequately until 2005. He received a performance award in 2003 and a raise based on his 2004 performance review. However, Fleishman received a "3" on his 2005 performance review, meaning he only met "most" expectations. This score also made him ineligible for a raise. Izzo discussed the review with Fleishman in the spring of 2006. According to Fleishman, Izzo informed him that Johnson made the ineligibility decision, and when Fleishman got upset, Izzo said "hey, she's out to get me too," referring to Johnson. Fleishman further testified that Izzo said he would talk to Mark Stevens, head of

legal services, about getting him a raise since he missed time in 2005, but Izzo informed him the next day that Stevens said time off did not mitigate the issues in the evaluation unless Fleishman took short-term disability.

Fleishman's issues persisted. Izzo continued receiving complaints from claims adjusters and, after reviewing a number of Fleishman's files, Izzo e-mailed Johnson informing her that he saw why the adjusters were dissatisfied. In September 2006, after consulting with Johnson and a human resources consultant, Izzo placed Fleishman on a performance improvement plan. The plan provided that if Fleishman did not improve in the next sixty days, Continental could take disciplinary action including termination. Despite these measures, Todd Lewis, Husnik's supervisor, complained that Fleishman "basically did nothing for [the MCU]." In response, Izzo met with Husnik who reiterated her dissatisfaction with Fleishman. In early 2007, Husnik and Lewis informed Izzo that they would not permit Fleishman to work on any more MCU cases. Izzo believed termination was the appropriate resolution to these issues, and after Izzo consulted with Johnson and Continental's assistant vice president of human resources, Fleishman's employment was terminated in January 2007. Izzo was forty-eight at the time, while Fleishman was fifty-four. Four months later, Continental hired forty-eight-year-old Patrick Cremin and transferred some of Fleishman's cases to him.

Shortly after his termination, Fleishman filed suit against Continental alleging violations of the ADEA

and ADA. The district court granted Continental's motion for summary judgment, finding that Fleishman failed to provide direct evidence of age discrimination and was not disabled under the ADA. Fleishman timely appealed.

## II. Discussion

Fleishman challenges the district court's entry of summary judgment against him on both his ADEA and ADA claims. The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *see also* 29 U.S.C. § 631(a) (limiting protections to individuals over forty). Similarly, the ADA prohibits an employer from discharging "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Summary judgment is appropriate when there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (2010). To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor.[1] *Id.* at 691. We review the district court's decision

[1] Fleishman continually asserts that the district court relied exclusively on Continental's Northern District of Illinois Local Rule 56.1 statement of facts and incorrectly took the evidence in the light most favorable to the defendant. We do not see a

(continued...)

de novo.

In discrimination cases, the plaintiff can survive summary judgment under either the direct or indirect method. For reasons discussed in more detail below, Fleishman proceeds under the direct-evidence method. Taken literally, direct evidence would require an admission by the employer, but we also permit circumstantial evidence that "points directly to a discriminatory reason for the employer's action." *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (alterations omitted). We have also called this a "convincing mosaic" of circumstantial evidence, but fundamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

---

[1] (...continued)
basis for these assertions. Pursuant to the local rule, Continental submitted a list of proposed undisputed facts that Fleishman answered paragraph by paragraph. The district court is not required to disregard a fact supported by deposition testimony based solely on Fleishman answering the paragraph "denied." Additionally, taking inferences in favor of Fleishman does not require accepting Fleishman's conclusion on what a piece of evidence indicates. Rather, the court independently reviews the evidence and, *if* it creates an inference, we take that inference in the light most favorable to the nonmoving party.

### A.  Summary Judgment Burdens

As an initial matter, the parties dispute what a plaintiff's summary judgment burden is in ADEA and ADA cases. Fleishman argues that he must produce facts that permit a jury to infer that discrimination was a "motivating factor" in his termination. However, *Gross v. FBL Financial Services* held that the ADEA's language proscribing discrimination "because of" age requires the plaintiff to prove at trial that age was the but-for cause of the adverse employment action. 557 U.S. 167, 176 (2009). We followed the Supreme Court's lead in *Serwatka v. Rockwell Automation, Inc.* by noting the ADA's analogous language likewise requires plaintiffs bear the ultimate burden of persuasion to show but-for causation. 591 F.3d 957, 962 (7th Cir. 2010).

Because summary judgment is designed to determine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), our post-*Gross* cases now require plaintiffs in ADEA cases to show evidence that could support a jury verdict that age was a but-for cause of the employment action at the summary judgment stage. *See, e.g., Barton v. Zimmer, Inc.*, 662 F.3d 448, 455-56 (7th Cir. 2011). Our sister circuits have done the same. *See, e.g., Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 504, 514-15 (8th Cir. 2011); *Mora v. Jackson Mem'l Fund*, 597 F.3d 1201, 1203-04 (10th Cir. 2010); *Schuler v. Price Waterhouse Coopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010); *Kelly v. Moser, Patterson and Sheridan, LLP*, 348 F. App'x 746, 749-50 (3d Cir. 2009).

Accordingly, we similarly extend *Serwatka*'s ADA causation requirement at trial to the summary judgment stage, meaning Fleishman must produce evidence permitting a jury to infer his age was a but-for cause of his termination.

We pause to note that this holding accords with other recent discrimination and employment cases that proceed differently at the summary judgment stage. First, constitutional claims, such as First Amendment retaliation cases, continue to proceed under the *Mt. Healthy* burden-shifting framework. *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Gross*, 557 U.S. at 179 n.6 (noting the decision does not alter constitutional cases that proceed under *Mt. Healthy*). Second, we have continued to apply the *McDonnell Douglas* burden-shifting framework in summary judgment cases that proceed under the indirect method of proof, a question *Gross* explicitly left open. *See, e.g., Senske v. Sybase*, 588 F.3d 501, 506-07 (7th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (applying *Gross*'s but-for causation standard through the *McDonnell Douglas* framework); *see also Gross*, 557 U.S. at 175 n.2 (leaving question open); *Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012) ("nothing in *Gross* overruled our cases utilizing [the *McDonnell Douglas*] framework to decide summary judgment motions in ADEA cases").

### B. ADEA Claim

Having established Fleishman's burden, we turn to his claims. With respect to the ADEA claim, Fleishman points to a few pieces of evidence he argues satisfy his burden: Izzo's comment that Johnson wanted to "get him too," Izzo's offer of retirement and severance at the onset of Fleishman's medical problems, and older lawyers' departure from Continental.

In 2006, Izzo reviewed Fleishman's 2005 performance review in which Johnson gave Fleishman a score that made him ineligible for a raise. Izzo responded to Fleishman's displeasure by stating "hey, she's out to get me too," referring to Johnson. This comment falls considerably short of evidencing discrimination. First, this comment is ambiguous; it is devoid of any indication that Johnson's alleged motivations were age related. We reached a nearly identical conclusion in a previous case. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841 (7th Cir. 1996) (absent age-related context, statement that management was "out to get [the two oldest employees]" alone was not direct evidence of discrimination even if the plaintiff interpreted it as age motivated). The ambiguity alone obviates this comment's relevance, but moreover, isolated comments are not probative of discrimination unless they are "contemporaneous with the discharge or causally related to the discharge decision-making process." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1140 (7th Cir. 1997). This comment is not contemporaneous because it came ten months before

Fleishman's termination. *See Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910-11 (2001) (two months before termination not contemporaneous); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 724 (7th Cir. 1998) (five months not contemporaneous). More importantly, there is no connection between it and the termination decision. Fleishman fails to explain how this comment relates to Continental's decisions, when the record reflects a clear, causally connected chain of events beginning with Husnik's and others' complaints about Fleishman's work, leading to Izzo's investigations into these concerns, and ending with Izzo's decision to terminate Fleishman for inadequate performance. *See Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998) (requiring plaintiff to connect noncontemporaneous comments to the employer's decision). Finally, even if Johnson's comment indicates she harbors age-related animus, she did not decide to fire Fleishman; Izzo did. And a nondecisionmaker's animus is not evidence that the employer's actions were on account of the plaintiff's age. *Metzger v. Ill. State Police*, 519 F.3d 677, 682 (7th Cir. 2008); *Davis*, 368 F.3d at 789. With respect to the last point, Fleishman argues under the cat's paw theory that Johnson's animus as a nondecisionmaker proximately caused Izzo's termination. *See generally Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009) (explaining the cat's paw theory). Fleishman limits this argument to one conclusory sentence, and he presents no facts supporting his theory that Johnson influenced the termination.

Next, Fleishman argues Izzo attempted to "coerce" him to retire. Fleishman grounds this argument in his 2004 conversation with Izzo where, in the middle of Fleishman's medical treatments, Izzo spoke to Fleishman about his declining numbers and asked Flieshman if he considered retirement.[2] Izzo promised he would receive severance if he decided to do so. Like the previous comment, however, this conversation is unconnected to a desire to remove Fleishman because of his age. A far more likely explanation is Fleishman's formerly adequate work fell off considerably at the time of his medical treatments, and Izzo, concerned Fleishman could no longer handle the workload, informed him that retirement would come with severance pay. Notwithstanding, over two years passed between this single comment and Fleishman's termination. This lapse in time obviates any connection between the comment and discharge when there is an intervening, legal reason for the termination—the external complaints to Izzo and Fleishman's inade-

---

[2] Fleishman disappointingly makes the disingenuous assertion that Continental "badgered" and "continuously" attempted to get him to retire. To the contrary, Fleishman only testified to this single conversation in 2004. Fleishman responded to the question "[is there] anything besides [the 2004 retirement conversation]" that "makes you believe that [Izzo] discriminated against you" by saying "[t]hat's all I can recall right now[;] I've had other conversations, but they don't come to me right now." This deposition testimony does not support counsel's assertions.

quate performance. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) (comments urging employee to "have all the kids you would like[ ]between spring, summer, and fall" lacked "causal nexus" to the termination because it was made a full year before the termination in a setting unrelated to the ultimate gravamen of the termination). Moreover, "suggestion[s] of retirement do[] not rise to the level of direct evidence of age discrimination" when there is an alternative explanation for the employment action. *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (retirement offered as alternative to termination for improper conduct); *see also Pitasi v. Gartner Grp.*, 184 F.3d 709, 714-15 (7th Cir. 1999) ("What would you think if we gave you early retirement, with some extra compensation because of your age?" offered as an alternative to laying plaintiff off was not discriminatory). Here, Izzo offered Fleishman severance, he declined, Fleishman continued to work, other employees began complaining about his performance, and then Izzo terminated him because of his performance. Like the other comment, this does not create any inference that Continental fired Fleishman because of his age.

Finally, Fleishman cursorily mentions a pattern of age discrimination. This argument is ostensibly related to a page in his statement of facts that notes ten lawyers between forty and sixty-five are "now gone from the Chicago office." Fleishman waived this argument because he "fail[ed] to develop the factual basis of [the] claim on appeal and, instead, merely draws and relies

upon bare conclusions." *Muhich v. Commissioner*, 238 F.3d 860, 864 n.10 (7th Cir. 2001). Notwithstanding, it lacks merit, as nothing connects these employees' departures to prohibited conduct (or even evidence Continental played a role in the decision). One would expect older employees to naturally leave their employers. Without more, this occurrence is not evidence of discrimination.

### C. ADA Claim

Next, we turn to the ADA claim. The ADA prohibits employers from taking adverse employment actions against their employees because of a disability. 42 U.S.C. § 12112(a). To succeed, Fleishman must be disabled under the ADA, which defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[3]

---

[3] We decide this case under the ADA standards prior to the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553 (2008), because Continental terminated Fleishman's employment before the ADAAA's enactment. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009). We note, however, the ADAAA broadened the ADA's protection by superseding portions of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002) to, inter alia, include a wider range of impairments that substantially limit a

(continued...)

Fleishman argues that his aneurism constitutes a disability and, additionally, Continental regarded him as having a disability.

### 1.  Substantially Limits a Major Life Activity

Fleishman has not produced evidence that his aneurism limits a major life activity. In his motion before the district court, Fleishman merely cited the Wikipedia article on aneurisms and concluded that the "ability to function and live is certainly a major life function." As both the district court and Fleishman's appellate brief recognize, however, determining whether a plaintiff has a disability is made on an individualized basis. Thus, the existence of a medical condition alone is insufficient to satisfy the ADA. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002) (holding "[i]t is insufficient for individuals . . . to merely submit evidence of a medical diagnosis of an impairment. . . . [T]he ADA requires . . . evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial" (alterations omitted)), *superseded*

---

3  (...continued)
major life activity. *See* Pub. L. 110-325 § II(a)(4)-(6). Accordingly, although Fleishman notes he was unable to drive during the period leading up to his termination, driving was not considered a major life activity prior to the adoption of the ADAAA. *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009). And in any event, Fleishman did not raise this argument in the district court.

*in part by* Pub. L. 110-325, 122 Stat. 3553 (2008); *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006) (citing *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001) ("It is well-established that a particular diagnosis, no matter how severe (or severe-sounding to the layperson), standing alone, is not sufficient to establish 'disability.' Rather, the inquiry as to disability is to be made on a case-by-case basis.") (alterations omitted)). Fleishman cannot rely on "the name or diagnosis of the impairment"; rather, he must show "the effect of that impairment on" him. *Burnett*, 472 F.3d at 483. Under this standard, Fleishman's bare assertion that his aneurism constitutes a disability is insufficient.

For the first time on appeal, Fleishman now contends that the aneurism limited his ability to work. He cites his 2005 performance review downgrading his score because he missed time. Fleishman waived this claim because he only argued the aneurism affected his ability to "function and live" in the district court. Notwithstanding, Fleishman testified at his deposition that his aneurism only prevented him from working for portions of 2003, 2004, and early 2005, but his condition did not prevent him from working from June 2005 until his termination in January 2007. And although he could not drive during that period, Fleishman stated in his deposition that he "went to all the status calls, [he] did [his] regular job, [and he] didn't ask for any accommodations" in 2005 or 2006. Although Fleishman's medical problems formerly affected his ability to work, they did not, by his own admission, limit his ability

to work nearly eighteen months leading up to his termination. Thus, Fleishman did not have a disability at the time of his termination. *See Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 726 (7th Cir. 1998) ("Patterson cannot argue that she is substantially restricted in her ability to work as a teacher, . . . because the undisputed evidence establishes that immediately upon her termination . . . Patterson was and has continued to be regularly employed as a teacher within the Chicago Public School system.").

### 2. Regarded as Disabled

Fleishman also contends Continental regarded him as having a disability. To succeed on this claim, he must establish that either (1) "the employer mistakenly believe[d] that [he] ha[d] an impairment that substantially limits a major life activity," or (2) "the employer mistakenly believe[d] that an existing impairment, which is not actually limiting, does substantially limit a major life activity." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009). Fleishman suggests that Continental did not believe he could work because, after twenty years of successful employment, its employees began criticizing his work and Izzo asked him if he considered retirement. As the district court explained, the evidence overwhelmingly suggests otherwise—at all times during and after his medical leave Continental continued to employ Fleishman as a workers' compensation attorney and, in fact, transferred

him to the newly created Major Claims Unit designed to handle high-value cases. Fleishman is correct that the evidence suggests Izzo and others knew Fleishman had medical problems related to his aneurism. But nothing suggests that anyone at Continental thought this condition substantially affected his ability to earn a living. Even amidst the performance complaints, Izzo placed Fleishman on a performance improvement plan. This measure indicates that, although Fleishman's work was suffering, Izzo believed he was capable of performing adequately.

### 3. Accommodation Claim

On appeal, Fleishman begins weaving arguments into his brief that Continental failed to accommodate his disability. 42 U.S.C. § 12112(b)(5)(A) ("the term discriminated against a qualified individual on the basis of disability includes—not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" (internal quotations omitted)). Again, because Fleishman is not disabled, this claim fails. But more importantly, he failed to raise it in his complaint, let alone his brief in the district court. And further, "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches," *Jovanovic v. Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000), and Fleishman never did so.

### D.  Indirect Evidence of Discrimination

In the district court, Fleishman acknowledged that he could survive summary judgment under either the direct or indirect methods before asserting "[w]e seek to establish intentional discrimination under the direct method of proof." On appeal, he now asserts a theory of indirect discrimination (at least under the ADEA), which is waived. In responding to Continental's waiver arguments, Fleishman misunderstands the waiver doctrine.

Fleishman first asserts he presented everything on which his appellate brief relies in his Northern District of Illinois Local Rule 56.1 statement of facts. But the waiver doctrine charges litigants with raising the arguments they present on appeal in the district court, not just the facts on which their appellate arguments will rely. *See Bus. Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 547 F.3d 882, 889 n.3 (7th Cir. 2008). Fleishman's positions are legal arguments urging us to deny summary judgment, and thus, wavier applies. *See also Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592-93 (7th Cir. 2010) (Weber waived proof by the direct method by failing to develop the argument in the district court).

In light of these issues, Fleishman urges us to consider his arguments. Although Fleishman is correct that the waiver rule is prudential and not jurisdictional, it serves important interests. By requiring litigants to raise their arguments in the district court, we, for example, prevent parties from getting two bites at the apple by raising two distinct arguments before each court, incentivize the presentation of well-reasoned

motions in the district court, and avoid unnecessary costs to the courts and parties by avoiding appeals that could have been decided below. Thus, we enforce the rule unless the "interests of justice" require otherwise. *Judge v. Quinn*, 624 F.3d 352, 360 (7th Cir. 2010). Such examples include where "failure to consider the alleged error would result in a miscarriage of justice," "the equities heavily preponderate in favor of correcting it," or "there was a plain error that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *See* 36 C.J.S. Federal Courts § 458 (footnotes omitted) (compiling cases).

In any event, a brief review of Fleishman's ADEA indirect evidence claim reveals it lacks merit. The indirect method of proof proceeds under the *McDonnell Douglas* framework, which requires Fleishman to show that (1) "he was meeting his employer's legitimate expectations," (2) "he suffered an adverse employment action," and (3) "similarly situated, substantially younger employees were treated more favorably." *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002). If successful, the defendant must provide a legitimate nondiscriminatory reason for the action. *Id.* The plaintiff then must show that there is an issue of fact whether this reason is pretextual. *Id.* Relying on a case in which we assumed arguendo that the plaintiff had established a prima facie case because he could not establish pretext, Fleishman remarkably skips this entire first step—asserting he "may skip over the initial burden-shifting of the indirect method and focus on the question of pretext." But his claim fails because he

cannot skip that step. Moreover, there is no evidence that younger employees were treated more favorably. In his statement of facts he relies on his faster case-closure rate than Marcy Singer-Ruiz and Steve Trotto, but both these individuals were close to Fleishman in age (forty-four and forty-eight respectively), and they received higher evaluation scores during the time in question. Thus, they were neither similarly situated nor substantially younger. For all of these reasons, this argument fails.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.