In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1043

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SALVATORE PICARDI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cr-00431-1 — **Thomas M. Durkin**, *Judge.*

ARGUED SEPTEMBER 4, 2019 — DECIDED FEBRUARY 19, 2020

Before ROVNER, SCUDDER, and ST. EVE, *Circuit Judges*.

ROVNER, *Circuit Judge.* A jury found Salvatore Picardi guilty
of one count of embezzlement by an officer or employee of the
United States, in violation of 18 U.S.C. § 654. The district court
sentenced Picardi to a term of eight months' imprisonment and
a fine of $100,000. On appeal, Picardi objects to the amount of
the fine and to the adequacy of the district court's explanation

for imposing an above-Guidelines fine. Because Picardi waived any argument regarding the fine, we dismiss the appeal.

## I.

Picardi was a United States Customs and Border Protection ("CBP") Officer working at the international terminal of O'Hare International Airport in Chicago. His assignment there was to screen passengers arriving from locations outside the country prior to their entry into the United States. On February 22, 2016, he was working in this capacity when he decided to steal money from a traveler who had been referred for a secondary inspection. Picardi's behavior that day contributed significantly to the sentence that the court imposed, but this appeal ultimately turns on waiver. To provide background for the waiver issue, we will briefly summarize the events of that day.

CBP Officer Federico Angulo was interviewing Ms. Chen, a Chinese woman who spoke no English, when Picardi volunteered to help with the inspection. Within moments of intervening, Picardi asked how much money Ms. Chen was carrying, demanded to see the money, learned that she was carrying $5,000 in $100 bills, and then took her purse and suitcase for a search while Officer Angulo and an interpreter interviewed Ms. Chen. Instead of searching the bags in the view of a security camera, Picardi placed them behind a desk that blocked the camera, removed the money and hid it on his person.

After Officer Angulo cleared Ms. Chen to enter the country, he directed her to wait in the hallway with her belongings as he completed the necessary paperwork. Ms. Chen soon

discovered that the money was no longer in her purse. A frantic search began. The interpreter, the interpreter's supervisor, Officer Angulo, another CBP officer and a CBP supervisor all participated in the search, as did Picardi. When none of the searchers found anything in Ms. Chen's belongings or in the room where the interview had taken place, the CBP supervisor conducted a body search of Ms. Chen. At that point, a watch commander was enlisted to review security camera footage of the interview room. While that review was taking place, the bags were moved to another room and the officers and interpreters continued the search through Ms. Chen's belongings. Picardi paced in and out of the new search area six times. After the sixth exit and entry, he picked up an item of Ms. Chen's clothing, turned away from a security camera and shoved the money into the clothing. He then tried to convince the several people who had searched that very item of clothing multiple times that the money had been there all along. He claimed it had fallen into the lining of the clothing through a hole in a pocket, and he then used a knife to cut the lining to support his story. Facing an incredulous group, he then tried to cast blame on Ms. Chen, suggesting that she was trying to "scam" them in order to get more money. The video evidence, of course, pointed to Picardi as the only person to have access to the money when it disappeared.

Picardi was charged with embezzlement by an officer or employee of the United States, in violation of 18 U.S.C. § 654. He remained free on bond pending trial. After a jury found him guilty, his bond was modified to require home confinement. While out on bond, Picardi harassed his estranged wife using electronic and other means. In addition to his own

harassing actions, he engaged a private detective in his efforts
to intimidate his wife, falsely telling the man that he was a
customs officer conducting a legitimate investigation. After
Picardi was convicted, he enlisted a friend to approach Ms.
Chen's adult daughter to persuade her to convince her mother
to recant her testimony. Ms. Chen's daughter instead contacted
law enforcement. Because of this conduct, the court revoked
Picardi's bond three months before his sentencing hearing and
he was taken into custody.

The Presentence Investigation Report ("PSR") was prepared
approximately one year prior to Picardi's sentencing hearing,
before some of the conduct that led to bond revocation came to
light. The PSR calculated a base offense level of six, and
recommended a two-level enhancement for abuse of trust
under Sentencing Guideline 3B1.3, for a total of eight. With a
Criminal History Category I, that calculation resulted in a
Guidelines range of zero to six months' imprisonment and a
fine between $2,000 and $20,000. The probation officer also
submitted a Sentencing Recommendation which, like the PSR,
had been drafted a year before the sentencing hearing. The
probation officer advocated for a prison term at the high end
of the range and a fine of $100,000, noting Picardi's capacity to
pay a fine in that amount. Calling attention to the many
aggravating factors in Picardi's case, the probation officer
remarked that, although the Guidelines failed to account for
the serious nature of Picardi's offense, she had considered
other Guideline enhancements and found none applicable.
R. 57, at 2.

At the sentencing hearing, both defense counsel and the
defendant confirmed that they had read and discussed the PSR

and the Sentencing Recommendation. Defense counsel offered one correction to the PSR regarding Picardi's participation in mental health counseling, which the court accepted. The government indicated that it was requesting two enhancements not mentioned in the PSR. The court then adopted the PSR except for the sentencing calculation.

The government proposed two two-point enhancements: one for vulnerable victim under Guideline section 3A1.1(b)(1), and one for obstruction of justice under Guideline section 3C1.1. The court rejected the vulnerable victim enhancement but agreed that a two-point obstruction enhancement was appropriate based on Picardi's use of a friend to attempt to influence a witness to recant testimony prior to sentencing. That resulted in an offense level of ten which carried a revised Guidelines range of six to twelve months' imprisonment and a fine of $4,000 to $40,000. The court then turned to the section 3553(a) factors, noting that it would consider under those factors whether a sentence outside the Guidelines range was appropriate.

The government argued for a prison sentence within the guidelines range of six to twelve months, mentioning several aggravating factors and a few mitigating factors. The government offered no argument regarding the recommended fine. Defense counsel emphasized how much Picardi had already suffered for his actions. He felt terrible guilt over the death of his father from a stroke that he suffered after Picardi was charged with this crime. Picardi's wife divorced him after he committed the offense, and he was unable to return to any job in law enforcement with a felony conviction on his record. Defense counsel also advised the court that the conviction

might result in Picardi losing his real estate license. Counsel also noted mitigating factors, including Picardi's participation in mental health treatment, and his commitment to ceasing harassment towards his ex-wife.

But the crux of counsel's argument was how much Picardi had suffered in prison during the three months following the revocation of bond. Noting that he knew what the government had asked for in terms of sentencing and what the probation department had recommended, counsel asked the court to limit the sentence to time served, arguing that Picardi had experienced significant difficulties in prison. R. 108, Sentencing Transcript, at 41–50 (hereafter "Sent. Tr."). At first, the other inmates misidentified him as a pedophile and threatened to physically harm him. Once the inmates learned that he was a law enforcement officer, they threatened him and labeled him a snitch. He had trouble eating and sleeping, and had lost a significant amount of weight. He became hyper-vigilant, and counsel described him as "terrified." Counsel continued:

> And I think that in the 90 days he has been in jail, he has experienced things that would rival any of the deeper recesses of Dante's hell. I ask your Honor to please cut short the abject terror of his life circum-stances and say, while clearly more would be appro-priate, what would be sufficient, but not greater than necessary.

Sent. Tr. at 48. Finally, counsel urged the court to consider imposing a fine rather than additional time in prison:

> And if there is a balancing consideration, to please strongly consider answering the question of what is

sufficient, with the response that the time he has already served in punishment is enough. There are other ways to punish an individual. This is a crime of taking someone else's money. Then a response in addition to the custody that he has served is one that has been recommended by the probation department, which is a fine.

Money this man can make honestly, legitimately, and has his whole life. His freedom and liberty has caused him to dwindle away physically and emotionally to a point where I fear for him. Not because I hope your Honor will give him a lighter sentence, but because I truly do. And I ask your Honor to consider that.

Sent. Tr. at 50.

After hearing Picardi's allocution, the court first determined that the probation office's recommendation of three years of supervised release was appropriate, and the court set the conditions for that period of release. The court then announced its decision as to the fine:

All right. I am going to impose a fine, the recommended fine of $100,000 – the defendant has the ability to pay it – and also a special assessment of $100. Given the fact that there is a fine, it should be paid during the period of supervised release.

Sent. Tr. at 61–62. The court said nothing more on the issue of the fine during the remainder of the sentencing hearing.

The court next turned to the issue of custody. The court found an extensive list of aggravating factors, and rejected much of the argument that Picardi had already suffered enough, finding much of the loss and pain to be self-inflicted. Citing the airport security video, the court deemed Picardi's conduct "callous and greedy," as well as calculating rather than impulsive and desperate as defense counsel had argued. Moreover, Picardi was acting as a law enforcement officer at the time he committed his crime, tarnishing the integrity of an important federal agency. He took advantage of an elderly Chinese woman who did not speak English, hoping that she would not discover his theft until she had left the airport. He caused her to undergo a body search knowing that the money was in his own pocket. And he attempted to deflect responsibility from himself by casting blame on his victim. The court noted that this was not a "paper crime" but instead involved a real victim who endured significant distress. The court remarked on Picardi's failure to apologize to the victim during his allocution to the court. The court also noted that Picardi had harassed his wife with electronic communications and had sent a private investigator to his mother-in-law's home. He had done all of these things in spite of having a happy, healthy upbringing, a good education, a supportive family, and no economic wants, which the court also considered to be aggravating circumstances. In mitigation, the court noted that Picardi had no prior criminal record, had undergone mental health treatment, and had many supportive letters from family and friends. The court indicated that it was inclined to go much higher than the six month sentence recommended by the probation officer because of the amount of aggravating

conduct, but the court was moved by some of the letters from family members. The court rejected the suggestion that time served was sufficient and sentenced Picardi to eight months' imprisonment, a term within the Guidelines range as recalculated to account for Picardi's attempt at obstruction of justice. Picardi appeals.

## II.

On appeal, Picardi challenges only the fine imposed. He faults the district court for failing to make specific findings under Guideline 5E1.2(d), and 18 U.S.C. §§ 3553(a) and 3572(a), in order to explain why the above-Guidelines fine was imposed. He characterizes the failure to adequately explain the fine as a procedural error. Picardi also asserts that the fine was substantively unreasonable. He concedes that he failed to object to the fine, but urges this court to find that he merely forfeited rather than waived his claims, rendering them reviewable under the plain error standard.

We must first consider whether Picardi forfeited or waived the arguments that he now makes on appeal. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). We may review a forfeited claim for plain error. Fed. R. Crim. P. 52(b); *Olano*, 507 U.S. at 733–34. Waiver, however, extinguishes any claim of error, precluding appellate review. *Olano*, 507 U.S. at 733; *United States v. Young*, 908 F.3d 241, 246 (7th Cir. 2018); *United States v. Aslan*, 644 F.3d 526, 537 (7th Cir. 2011).

Although we have characterized the line between forfeiture and waiver as often blurry, we have noted some distinctions that aid the analysis. *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). Forfeiture typically results from an accidental or negligent omission; waiver arises from a knowing and intentional decision. *Garcia*, 580 F.3d at 541. When a defendant chooses as a matter of strategy not to present an argument or objection, we generally view that choice as waiver. *Young*, 908 F.3d at 247 (if a defendant fails to raise a specific objection at sentencing, we will view it as having been waived if the defendant had a strategic reason to forgo the argument); *Garcia*, 580 F.3d at 541 (in distinguishing between forfeiture and waiver, the important concern is whether the defendant chose, as a matter of strategy, not to present an argument); *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008) (if a specific objection was not raised at sentencing, we will view it as having been waived if the defendant had a strategic reason to forgo the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection).

For example, a defendant who accepted a plea agreement that contained a stipulation as to the amount of the loss and restitution for a fraud charge waived any later claim regarding that amount on appeal. *Young*, 908 F.3d at 246–47. This was because the defendant made a strategic decision to stipulate to certain loss and restitution amounts in order to avoid a trial and the possible inclusion of additional amounts. *Id*. Similarly, a defendant who did not object to the scope of jointly under-taken criminal activity in order to preserve a sentencing reduction for acceptance of responsibility waived any objection

to that scope. *Aslan*, 644 F.3d at 537; *United States v. Salem*, 597 F.3d 877, 890 (7th Cir. 2010) (same).

In this case, the strategic decision is obvious on the face of the record, and Picardi has waived his objections both to the amount of the fine and to the adequacy of the explanation. We begin by noting that both Picardi and his lawyer affirmed at the sentencing hearing that they had read and discussed the probation officer's Sentencing Recommendation. That document included the proposed $100,000 fine, a recommendation made at a time when the maximum Guidelines fine had been calculated to be $20,000. That maximum was adjusted upward to $40,000 at the sentencing hearing, and Picardi does not assert that the court miscalculated the correct Guidelines range for the fine. Moments before making his case for a sentence of time served, counsel affirmed again that he knew "what the probation department has recommended." Sent. Tr. at 45. There can be little doubt that both Picardi and his lawyer knew what was at stake: the maximum under the Guidelines was $40,000, and the probation department recommendation was $100,000.

In the context of a sentencing recommendation for custody at the high end of the Guidelines and a $100,000 fine, Picardi's counsel made an extensive plea for a sentence of time served because of the extreme difficulties that Picardi had encountered in his three months in prison. Aware that "clearly more [time] would be appropriate," (Sent. Tr. at 48), and that the court might not accede to a request for time served, counsel offered the court a "balancing consideration." Sent. Tr. at 50. Specifically, he argued that time served was punishment enough, and that "[t]here are other ways to punish an individual." Sent. Tr.

at 50. Namely, because the nature of the crime was "taking someone else's money," "[t]hen a response in addition to the custody that he has served is *one that has been recommended by the probation department,* which is a fine." Sent. Tr. at 50 (emphasis added). That was a third and explicit acknowledgment that counsel was aware of the probation department's recommendation and was now proposing to balance the request for time served (three months) with the recommended fine ($100,000). The balance he proposed was thus for a below-Guidelines sentence of three months,[1] in exchange for the above-Guidelines fine recommended by the probation department. Counsel concluded by expounding on Picardi's ability to make money, and drove home his point that custody had "caused him to dwindle away physically and emotionally to the point where I fear for him." Sent. Tr. at 50. It was only after this argument that the court announced that it was fining Picardi the amount recommended by the probation officer.

This was not simply an inadvertent failure to object to the imposition of an above-Guidelines fine; it was a calculated, strategic decision. Counsel was aware of the many aggravating factors present in the case. Before pitching his "balancing consideration" argument, counsel had twice indicated that he was aware of the probation department's sentencing recommendation, which of course included the proposed $100,000 fine. He then referred a third time to the recommendation by

---

[1] Three months constituted half of the bottom of the Guidelines range (six months), and only one-quarter of the top of the range (twelve months). The recommended fine of $100,000 was two and a half times the top of the range ($40,000).

suggesting that the court impose that fine in lieu of additional prison time. Those three references to the probation department's recommendation, without any accompanying objection to the above-Guidelines fine, would have led any judge to believe that counsel knew the amount and had no problem with the recommended fine. The failure to flag the amount of the recommended fine as an issue was clearly the result of a strategic decision made in the hope that it would work to his client's benefit on the custody determination. *See Young*, 908 F.3d at 247 (finding an objection to loss and restitution amounts waived when defendant had stipulated to the amounts in the hopes of avoiding greater liability). That the strategy was not entirely successful (because the court ordered additional custody as well as the fine) does not mean that it was not a strategy. Moreover, Picardi can hardly complain that the court failed to explain adequately its decision to impose the above-Guidelines fine when counsel led the court to believe that he had no objection to the fine. *See United States v. Walton*, 255 F.3d 437, 442 (7th Cir. 2001) ("A party may not by his own actions lull the court into believing that an express finding is unnecessary and then object when it makes no such finding.").

In general, the better practice is for a court to explain its reasons for imposing an above-Guidelines fine. In the usual course of reviewing sentences, we first ensure that the district court committed no significant procedural error such as incorrectly calculating the Guidelines range or failing to explain adequately the chosen sentence, among other things. *Gall v. United States*, 552 U.S. 38, 51 (2007). Guideline 5E1.2 and 18 U.S.C. § 3572(a) (which incorporates by reference section

3553(a)) set forth factors for courts to consider in setting a fine.[2] A court need not offer express or specific findings for every factor, and it is sometimes clear from the record that the court has properly considered the relevant factors. *United States v. Artley*, 489 F.3d 813, 826 (7th Cir. 2007). But we will remand where it is unclear whether the court has considered the relevant factors, such as when the court adopts the factual findings of the PSR but then deviates from the recommendation of the probation office, or if the court declines to adopt the findings of the PSR and makes no findings of its own. *Id*; *United States v. Bauer*, 129 F.3d 962, 968 (7th Cir. 1997). *See also United States v. Washington*, 739 F.3d 1080, 1082 (7th Cir. 2014) (upholding below-Guidelines fine because it was not inconsistent with the recommendation of the adopted PSR). But the defendant here waived any objection to the fine and led the court to believe that there was no reason to further explain its decision. That waiver extinguishes any claim of error, precluding appellate review. The appeal is therefore DISMISSED.

---

[2] Sentencing Guideline 5E1.2 directs courts to impose fines in all cases except those where the defendant establishes that he is unable to pay and is not likely to become able to pay. The court did in fact find that Picardi had the ability to pay the fine imposed, and the PSR (which the court adopted without objection) established a solid factual basis for that finding, namely, Picardi's significant net worth. Interestingly, counsel's argument at the sentencing hearing touched on many of the factors that courts must consider under Guideline 5E1.2(d) and section 3572(a) in setting the amount of the fine. The "balancing consideration" plea that counsel offered supports the above-Guidelines amount under those factors.