In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 19-3100

SOO LINE RAILROAD COMPANY d/b/a CANADIAN PACIFIC,

*Plaintiff-Appellant*,

*v.*

CONSOLIDATED RAIL CORPORATION, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:17-cv-106 — **Andrew P. Rodovich**, *Magistrate Judge*.

———————

ARGUED JUNE 3, 2020 — DECIDED JULY 15, 2020

———————

Before SYKES, *Chief Judge*, and BAUER and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Soo Line Railroad Company, which we refer to by its business name, Canadian Pacific, sought to bring state-law claims under the diversity jurisdiction of the district court. Its suit centered on a trackage rights agreement—a contract governing one railroad's use of another's track—that the Indiana Harbor Belt Railroad Company had signed with its majority shareholders at a price that Canadian

Pacific, the minority shareholder, alleged was detrimental to Indiana Harbor's profitability.

Canadian Pacific, though, had a problem. The Surface Transportation Board (STB) has exclusive authority to regulate trackage rights agreements, or to exempt such agreements from its approval process, and it had exempted Indiana Harbor's agreement. The defendants argued that, by effect of this exemption authority, two statutes—49 U.S.C. §§ 10501(b) and 11321(a)—independently preempted Canadian Pacific's claims. The district court agreed with both arguments, but in this appeal we focus on only one. The court concluded that § 11321(a) preempted the claims and noted that Canadian Pacific had made no argument otherwise. Because we agree that Canadian Pacific failed to contest this basis for dismissal, we affirm the judgment on grounds of waiver.

## I

Although the ownership structure of Indiana Harbor is somewhat complex, we can simply summarize it. Plaintiff Canadian Pacific owns 49%; defendant Consolidated Rail Corporation owns 51%. Two other defendants, Norfolk Southern Corporation and CSX Corporation, indirectly own Consolidated Rail. Norfolk Southern and CSX each control two directors on Indiana Harbor's seven-person board and, thus, have a majority over Canadian Pacific's three directors.

Indiana Harbor operates as a switch carrier on tracks owned by Consolidated Rail and its parent companies near Chicago. These railroads managed their arrangement with a 99-year contract executed in 1906 between Indiana Harbor and the previous owners of the tracks. Under the 1906 agreement, Indiana Harbor would pay the track owners annual

rent of approximately $150,000 for the use of the tracks, some of which it would supervise and maintain. The track owners would then pay Indiana Harbor a share of the operating and maintenance expenses for their proportional use of the supervised tracks. Near the turn of the century, Consolidated Rail was paying over $2 million a year in expenses.

Things changed in 1999. According to Canadian Pacific's amended complaint, which we accept as true in the posture of this appeal, Consolidated Rail stopped paying expenses and invoicing Indiana Harbor for rent that year. This alleged quid pro quo cessation lasted through the remainder of the contract term, which ended in 2005, and into the extended negotiations over a new trackage rights agreement.

Canadian Pacific alleges that during these negotiations, Consolidated Rail and its parent companies used their power as majority shareholders to force Indiana Harbor into an atrocious deal. Indiana Harbor's board had obtained an independent appraisal estimating that a fair annual rent for the tracks was $1.3 million and unanimously resolved to offer that much, but they were rebuffed. Instead, Consolidated Rail threatened to involve the STB; Norfolk Southern demanded the rent that had gone unpaid since 1999; and CSX even warned it would evict Indiana Harbor if it did not agree to a higher price. Under this pressure, Indiana Harbor's board split 4-3 along company lines to approve a new agreement at a total annual rent of $5 million and with terms that Canadian Pacific insists transferred ownership of Indiana Harbor's assets to the track owners.

Indiana Harbor, Consolidated Rail, Norfolk Southern, and CSX then notified the STB of their agreement. Under federal law, the STB must approve a trackage rights agreement before

it can be carried out. 49 U.S.C. § 11323(a)(6). Regulations, however, exempt certain transactions from this approval process, including trackage rights agreements that are "(i) based on written agreements, and (ii) not filed or sought in responsive applications in rail consolidation proceedings." 49 C.F.R. § 1180.2(d)(7); *see also* 49 U.S.C. § 10502(a) (authorizing exemptions). The railroads all applied for this exemption, and the STB granted it over Canadian Pacific's request to stay the proceedings. *Indiana Harbor Belt R.R.—Trackage Right—Consolidated Rail Corp., CSX Transp., Inc., & Norfolk S. Ry.*, No. FD 36099, 2017 WL 992358 (Mar. 14, 2017).

Canadian Pacific predicated its stay motion on the litigation in this case. It had filed a verified complaint earlier that month alleging that Consolidated Rail, Norfolk Southern, and CSX had breached fiduciary duties they owed to it and Indiana Harbor under Indiana law. As remedies, Canadian Pacific sought compensatory and punitive damages based on the alleged overpayment for the trackage rights, voidance of the new agreement, an injunction requiring Indiana Harbor's board to approve only the $1.3 million price, and an order for Consolidated Rail to pay the operating and maintenance expenses it owed since 1999.

Consolidated Rail moved to dismiss the complaint for failure to state a claim. It argued that 49 U.S.C. § 10501(b) and 49 U.S.C. § 11321(a) independently preempted Canadian Pacific's claims.

Section 10501(b) gives the STB exclusive jurisdiction over "transportation by rail carriers, and the remedies provided in this part with respect to rates." Such remedies "with respect to regulation of rail transportation … preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).

Canadian Pacific was seeking remedies with respect to the rates charged for trackage rights, Consolidated Rail argued, so any state-law remedies were preempted.

Section 11321(a) provides that "[a] rail carrier, corporation, or person participating in … [an] exempted transaction is exempt from the antitrust laws and all other law, including State and municipal law, as necessary to let that rail carrier, corporation, or person carry out the transaction." 49 U.S.C. § 11321(a). Because the STB exempted the trackage rights agreement, Consolidated Rail asserted that it was exempt from Indiana tort law to the extent the claims sought to prevent the terms of the transaction, including price, from being carried out.

Although neither preemption argument extended to the alleged failure to pay expenses in breach of the 1906 agreement, Consolidated Rail contended that claim failed for a different reason. It owed expenses only for its proportional use of the tracks, but the complaint never alleged that it had used the tracks after 1999.

Before the district court ruled on the first set of motions to dismiss, Canadian Pacific amended its complaint. It added more defendants, including the whole family of subsidiaries and holding companies through which Norfolk Southern and CSX owned Consolidated Rail, as well as the four directors who had approved the agreement. Regarding the expenses, though, it still failed to allege that Consolidated Rail had used the track after 1999.

Consolidated Rail, Norfolk Southern, and CSX jointly moved to dismiss, adopting Consolidated Rail's preemption arguments. Although it thoroughly contested the defendants'

reading of § 10501(b), Canadian Pacific did not respond to the § 11321(a) argument other than to assert, without elaboration, that the section did not preempt its claims.

A magistrate judge, presiding by consent, agreed with both of the defendants' preemption arguments. Regarding § 11321(a), the judge straightforwardly reasoned that the claims would prevent the trackage rights agreement from being carried out as exempted. Canadian Pacific had "not presented any argument to the contrary."

The court then requested supplemental briefing on the expenses issue. During the period of supplemental briefing Canadian Pacific still did not try to amend its complaint to add the necessary facts that Consolidated Rail had consistently identified as missing. Without an allegation that Consolidated Rail had used the track after 1999, the district court concluded that Canadian Pacific failed to state a plausible breach of contract claim. Finally, the remaining defendants asked the court to dismiss them alongside the others. The court agreed and entered final judgment.

## II

On appeal, Canadian Pacific challenges the breadth of the district court's preemption analysis, which it asserts deprives minority shareholders of any remedy for corporate malfeasance even tangentially related to trackage rights. The defendants, for their part, center their defense of the judgment on § 11321(a) and, specifically, Canadian Pacific's failure to make any argument relating to that section in the district court. They assert that this omission amounts to waiver. We agree.

Generally, "[f]ailing to bring an argument to the district court means that you waive that argument on appeal."

*Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018). A party must present the specific argument urged on appeal and cannot rest on having addressed the same general issue. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Although the argument need not be present in all its particulars and a party may elaborate in its appellate briefs, *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015), a conclusory argument that amounts to little more than an assertion does not preserve a question for our review. *Betco Corp. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017).

In response to the joint motion to dismiss, Canadian Pacific made only two references to § 11321(a). It noted that the statute's preemptive scope was "far from unlimited" before transitioning into arguments about the meaning of the word "regulation" in § 10501(b), and it asserted that the defendants' arguments under both § 10501(b) and § 11321(a) were inconsistent with their representations before the STB. It did not support any of its arguments with even a single legal authority purporting to interpret § 11321(a), let alone those authorities pressed on appeal. With so little, we understand why the district court concluded that Canadian Pacific had not truly contested preemption under § 11321(a).

Canadian Pacific does not pretend that it made its arguments in the district court or try to classify its appellate briefs as an elaboration. Rather, it accepts that it waived its § 11321(a) arguments—as well as some § 10501(b) arguments more nuanced than those presented to the district court—and asks us to overlook that waiver.

We have the discretion to take up these issues in the first instance, *see Singleton v. Wulff*, 428 U.S. 106, 121 (1976), "but to

say that an appellate court *may* address an issue that was for-feited in the district court is not to say that it *must*." *Builders NAB LLC v. FDIC*, 922 F.3d 775, 778 (7th Cir. 2019). Canadian Pacific offers us no persuasive reason to address its new argu-ments. It does not even explain why it so poorly developed its theories in the district court and asserts only that we have been more willing to overlook waiver when the new argu-ment on appeal raises a pure question of law or statutory in-terpretation. *See, e.g.*, *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 351 (7th Cir. 2017) (en banc); *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993).

A question of law is not an express ticket to the court of appeals that permits passing by the district court. Although we are more conducive to forgiving waiver of legal issues, we still do so only "sparingly" and in "rare instance[s]." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015). The posture of this appeal—from dismissal under Federal Rule of Civil Procedure 12(b)(6)—means that nearly all arguments that can be put before us are "abstract" questions of law. *Ash-croft v. Iqbal*, 556 U.S. 662, 674 (2009). Nevertheless, we rou-tinely decline to consider new arguments on appeal from dis-missals at the pleadings stage. *E.g.*, *Lee v. Ne. Ill. Reg'l Com-muter R.R.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019); *G & S Hold-ings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012); *Cty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817–20 (7th Cir. 2006); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041–42 (7th Cir. 1999). We see nothing about this dismissal to make it any more worthy of consideration than any other. In-deed, it may well be less deserving. Canadian Pacific is a so-phisticated party, represented by able counsel, and knew it needed to raise all arguments it had against the motion to

dismiss, yet it failed to do so without explanation. *See Cty. of McHenry*, 438 F.3d at 820.

Litigants are obligated to present to the district court both factual and legal arguments in support of their positions. Canadian Pacific decided how to litigate its case, offered the district court nothing at all on an entire theory of the defendants' case, and predictably lost. That it lost as matter of law, not fact, does not alone incline us to revisit that outcome.

Canadian Pacific's waiver, though, does not resolve the entire appeal. The defendants did not argue in the district court that § 11321(a) exempted them from Canadian Pacific's claims for damages relating to the operating and maintenance expenses under the 1906 agreement. (They raise a new argument along these lines on appeal, but waiver cuts both ways and we say no more on that theory.) The question remains, then, whether the complaint stated a claim based on these expenses.

We review de novo the dismissal of a complaint for failure to state a claim. *See Div. Six Sports, Inc. v. Finish Line, Inc.*, 928 F.3d 631, 635 (7th Cir. 2019). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Canadian Pacific argues that the district court erred by addressing its claim as a breach of contract instead of a breach of fiduciary duty. Whatever label we use, though, Canadian Pacific has failed to state a claim. Even as Canadian Pacific recasts its allegations on appeal, it insists only (1) Consolidated Rail had an obligation to pay consistent with the terms of the

1906 agreement, (2) Consolidated Rail stopped paying in 1999, and (3) Canadian Pacific is "entitled to recover damages." That is a fair summary of the relevant parts of the complaint and it also easily demonstrates the complaint's failings. The third statement is a bare legal conclusion that we need not credit and the former two are textbook examples of facts "'merely consistent with' a defendant's liability" that do not elevate the claim to a level of plausibility. *Id.*; *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 471 (7th Cir. 2020). Under the terms of the 1906 agreement, Consolidated Rail was obligated to pay expenses only if it used the tracks (or allowed others to use the tracks). If it stopped using the tracks in 1999, as it represented to the STB, then it could stop paying without breaching a single fiduciary or contractual duty. Despite having ample opportunity to do so, Canadian Pacific never alleged that Consolidated Rail used the tracks or allowed others to use them after 1999, so it did not state a plausible claim based on the failure to pay expenses after that date.

AFFIRMED