In the

# United States Court of Appeals
## for the Seventh Circuit

―――――――――――

No. 22-1082

CROTHERSVILLE LIGHTHOUSE
TABERNACLE CHURCH, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

CHURCH MUTUAL INSURANCE COMPANY, S.I.,

*Defendant-Appellee.*

―――――――――――

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:20-cv-00153 — **Tanya Walton Pratt**, *Judge.*

―――――――――――

ARGUED APRIL 5, 2023 — DECIDED MARCH 2, 2026

―――――――――――

Before BRENNAN, *Chief Judge*, and SYKES and HAMILTON,
*Circuit Judges*.

SYKES, *Circuit Judge*. This insurance dispute arises from a
fire at the Lighthouse Tabernacle Church in Crothersville,
Indiana, a small community in the southeastern part of the
state. The fire caused significant damage, and Lighthouse
Tabernacle promptly notified its insurer, Church Mutual
Insurance Company. The property was insured for

$2.3 million, and the policy provided baseline coverage for its actual cash value, which accounts for depreciation. The policy also promised to pay higher replacement-cost benefits *if* the insured actually repaired or replaced the damaged property and did so "as soon as reasonably possible after the loss or damage."

Lighthouse Tabernacle sought payment at replacement-cost value, but disputes arose over estimates of the cost to replace the building. While the parties worked through their differences, Church Mutual sent Lighthouse Tabernacle a $1.2 million check for the undisputed cash value of the property and separate payments for business property losses. In the months that followed, Church Mutual increased its replacement-cost estimate and sent several checks covering additional agreed amounts, bringing its total payment on the claim to nearly $1.7 million. In the meantime, Lighthouse Tabernacle continued to dispute the insurer's replacement-cost estimate and did not move forward to repair or replace its building.

Instead, about two years after the fire, Lighthouse Tabernacle sued Church Mutual in state court for breach of contract and bad-faith denial of its replacement-cost claim. The insurer removed the case to federal court and moved for summary judgment, explaining that the church had not complied with its contractual obligation to repair or replace the damaged property as soon as reasonably possible, so no further payment was owed. In response Lighthouse Tabernacle raised factual issues concerning the cost-estimate dispute and the credibility of two insurance adjusters—none of which was responsive to Church Mutual's legal argument about the church's failure to comply with the contractual

conditions for replacement-cost benefits. Unsurprisingly, the district judge granted the motion and entered judgment for Church Mutual.

With new counsel on appeal, Lighthouse Tabernacle belatedly raises an argument in response to the legal basis for the summary-judgment motion. Citing a pair of decisions from the Indiana Court of Appeals, the church maintains that it was relieved of its contractual obligation to timely rebuild. This argument comes far too late, but the church asks us to review it and grant relief under the civil version of the plain-error doctrine.

We decline the invitation. By choosing to advance certain arguments at summary judgment while omitting others, Lighthouse Tabernacle waived the argument it now presses on appeal. Even if the church merely forfeited the argument, plain-error review in civil cases is rare and available only in extraordinary circumstances. This case does not qualify. We affirm the judgment.

## I. Background

Lighthouse Tabernacle is a small Apostolic Pentecostal church in Crothersville, Indiana. Its church building caught fire in early June 2018, causing extensive damage to the sanctuary, offices, classrooms, and baptismal area. Lighthouse Tabernacle promptly notified its insurer, Church Mutual, of the loss.

The insurance policy carried a property-loss limit of $2.3 million and provided replacement-cost coverage under certain conditions. Replacement-cost insurance covers "the difference between what [a] property is actually worth and what it would cost to rebuild or repair that property."

12A JORDAN R. PLITT ET AL., COUCH ON INSURANCE § 176:56 (3d ed. 2025 update). In contrast to the standard measure of property loss—actual cash value, which deducts for depreciation, *see id.* § 175:18—replacement-cost coverage focuses on the cost of replacing the damaged property.

Lighthouse Tabernacle notified Church Mutual that it sought payment at the higher replacement-cost value of its loss. The policy sets clear limits on the recovery of replacement-cost benefits. It states that Church Mutual "will not pay" on a replacement-cost basis (1) "[u]ntil the lost or damaged property is actually repaired or replaced" and (2) "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." In other words, the policy's baseline measure of loss is the actual cash value of the damaged property; the insurer promised to pay replacement costs in excess of actual cash value *only* if the insured promptly repaired or replaced the damaged property. The policy also limited replacement-cost payments to the lowest of the following: the cost to replace the property with similar materials; the amount the insured actually paid to repair or replace the property; or the policy limit—here $2.3 million.

Soon after the fire, Church Mutual retained a building consultant to estimate the cost of replacing the church building. In August the consultant returned an estimate of $1.4 million. Lighthouse Tabernacle's public adjuster objected and in September sent a replacement-cost estimate of over $2.2 million—close to the policy limit. Church Mutual then reconsidered and increased its replacement-cost estimate by almost $200,000. Lighthouse Tabernacle submitted a

"proof of loss" form in November listing a replacement cost of $1.7 million and an actual cash value of $1.2 million.

In early December—five months after the fire—Church Mutual sent the church a $1.2 million check for the undisputed actual cash value of the property. The insurer had previously sent several separate payments for loss of business property. Each of these checks was accompanied by a letter explaining that the payment was based on actual cash value, and that to recover replacement costs in excess of that amount, the insured should complete its repair or replacement of the property within 180 days and provide receipts, which would be used to determine additional payments. The letter also asked the insured to notify the adjuster if it was unable to complete the repairs or replacement within that timeframe.

Church Mutual revised its estimate of replacement costs again in February 2019, increasing it to over $1.7 million. Lighthouse Tabernacle objected to this new estimate too; the dispute centered on the projected cost for the new sanctuary ceiling. In August Church Mutual told Lighthouse Tabernacle that it would hire an engineering firm to review the matter and provide another estimate. That same month, the church sent another proof of loss, but Church Mutual rejected it as incomplete. Two months later, Church Mutual paid another $170,000 in additional undisputed actual cash value.

As Lighthouse Tabernacle continued to criticize Church Mutual's estimate for the ceiling, its agent notified the insurer in December 2019 that the church wanted to proceed with demolition. Church Mutual responded that Lighthouse Tabernacle could move forward with demolition and replacement as it saw fit, but that the "remaining claim" was

still under review and the insurer could not "make any commitments" about additional payments until it received and reviewed the new engineer's report. The church did not proceed with demolition and replacement.

The engineer's estimate arrived later in December. It was higher than Church Mutual's but not close to Lighthouse Tabernacle's. The church objected to the new report and questioned the engineer's qualifications and expertise. In March 2020 Lighthouse Tabernacle requested an appraisal to resolve the dispute about the estimate. The insurer responded with the name of its appraiser. In late March Church Mutual sent Lighthouse Tabernacle a check for an additional $20,000, which reflected the difference between the engineer's estimate and the total amount the insurer had already paid. With that payment, which was its last, Church Mutual had paid the church nearly $1.7 million on its claim. And Lighthouse Tabernacle still had not begun to repair or replace the church building.

That's where things stood in early June 2020 when Lighthouse Tabernacle sued Church Mutual in state court for breach of contract and bad-faith denial of replacement-cost benefits. The insurer removed the case to federal court and eventually moved for summary judgment, noting that Lighthouse Tabernacle had not complied with the policy's prompt-repair requirement and thus was not entitled to further replacement-cost payments. In response Lighthouse Tabernacle raised factual issues—namely, disputes over the estimates and the credibility of Church Mutual's adjusters. The church cited no cases except a few describing the summary-judgment standard.

The district judge granted the motion, explaining that Lighthouse Tabernacle had utterly failed to engage with Church Mutual's key argument, which centered on the church's failure to comply with the contractual prerequisites for replacement-cost recovery. Any factual disputes between the parties over replacement-cost estimates or the credibility of the adjusters were irrelevant and not responsive to that argument. Lighthouse Tabernacle hadn't explained why it was entitled to additional replacement-cost proceeds despite its failure to begin repairs as required by the policy, so the judge entered judgment for Church Mutual.

This appeal followed. One further development bears on the argument the church raises here. Lighthouse Tabernacle was represented by attorney Jason Smith in the district court and initially on appeal. After Smith filed his opening brief, we suspended him from the bar of this court based on his troubling performance in two unrelated appeals, as well as his history of disciplinary sanctions in the Indiana Supreme Court and the district court in Southern Indiana. *See In re Attorney Jason Smith*, No. D-22-01 (7th Cir. Mar. 31, 2022); *see also* FED. R. APP. P. 46(b). Because he was prohibited from practicing law in this court, we suspended briefing to permit the church to obtain new counsel. Its first replacement attorney withdrew a few months after filing his appearance because he was not admitted to practice in our court. Lighthouse Tabernacle eventually found new counsel, who briefed and argued the appeal.

## II. Discussion

With the assistance of new counsel on appeal, Lighthouse Tabernacle mounts a belated response to the summary-judgment motion. The church maintains that it was unable

to begin repairs while the dispute over the replacement-cost estimates remained unresolved. Relying on two cases from the Indiana Court of Appeals—*Rockford Mutual Insurance Co. v. Pirtle*, 911 N.E.2d 60 (Ind. Ct. App. 2009), and *Westfield National Insurance Co. v. Nakoa*, 963 N.E.2d 1126 (Ind. Ct. App. 2012)—Lighthouse Tabernacle now argues that this ongoing dispute relieved it of its contractual obligation to promptly repair or replace the property as a condition to receipt of replacement-cost payments.

The church concedes, as it must, that this argument is completely new on appeal. So at best, our review is narrowly circumscribed by the plain-error doctrine, if review is available at all.

We haven't always been consistent in the articulation and application of the civil version of plain-error review. Our en banc decision in *Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020), covered substantial ground in clarifying the doctrine. Like the more familiar version that applies in criminal cases, the threshold inquiry in civil cases turns on the distinction between waiver and forfeiture, which are "distinct legal concepts." *Henry*, 969 F.3d at 786.

Though "often used interchangeably" by lawyers and judges alike, the terms waiver and forfeiture "are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). "[W]aiver is the 'intentional relinquishment or abandonment of a known right'"; "'forfeiture is the mere failure to raise a timely argument.'" *Henry*, 969 F.3d at 786 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

In criminal cases "waiver precludes review," but forfeited errors are entitled to limited appellate review: "forfeiture

permits a court to correct an error under [the] plain error standard" set forth in Rule 52(b) of the Federal Rules of Criminal Procedure. *Id.* (citing *Olano*, 507 U.S. at 731–35); *see United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) .

In the civil context, waiver is also the end of the line: "we can't review waived issues at all."[1] *Ricci v. Salzman*, 976 F.3d 768, 771 n.2 (7th Cir. 2020). In contrast to criminal cases, however, in the civil context forfeited issues are not reviewable for plain error as a general matter; there is no civil counterpart to Criminal Rule 52(b). Rather, "our ability to review for plain error in civil cases is severely constricted" because "a civil litigant should be bound by his counsel's actions." *Henry*, 969 F.3d at 786 (quotation marks omitted). So "in civil cases, we typically will not entertain an argument raised for the first time on appeal, even for the limited purpose of ascertaining whether a plain error occurred." *Id.* (quotation marks omitted). Though we have the discretion to review forfeited issues and correct plain errors in civil cases, we will do so only "in the rare situation where a party can demonstrate that: (1) exceptional circumstances exist; (2) substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Id.* (quotation marks omitted).

---

[1] Some of our decisions say or imply that we have discretion to consider waived arguments in civil cases presenting "truly exceptional circumstances." *Lane v. Structural Iron Workers Loc. No. 1 Pension Tr. Fund*, 74 F.4th 445, 450 (7th Cir. 2023); *see Walker v. Baldwin*, 74 F.4th 878, 883 (7th Cir. 2023) ("Finding waiver, however, does not end our inquiry."). These cases appear to conflate waiver with forfeiture or treat the terms as synonymous—a common error, as the Supreme Court noted in *Hamer v. Neighborhood Housing Services of Chicago*, 538 U.S. 17, 20 n.1 (2017).

Church Mutual contends that Lighthouse Tabernacle has waived rather than forfeited its new argument. If that's right, then review is precluded, and we need not even consider whether to exercise our discretion to review for plain error.

"An appellant may waive [an] issue or argument in many ways," including "by failing to raise the issue or argument in the district court, either at all or in a timely fashion." *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023). This rule applies in full force when a litigant fails to advance an argument at summary judgment and then presses it on appeal. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments … not raised in its response to the moving party's motion for summary judgment."). This follows from the nonmoving party's obligation to "inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir. 2021) (quotation marks omitted).

The raise-it-or-lose-it rule serves several key interests. Enforcing waiver "prevent[s] parties from getting two bites at the apple by raising two distinct arguments before each court"—precisely what Lighthouse Tabernacle seeks to do here. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012). The waiver rule also incentivizes litigants to provide the district judge with "well-reasoned motions," *id.*, a practice that helps "fully flesh[] out" cases before appellate review, *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018). And the rule preserves the resources of courts and litigants by avoiding the unnecessary costs of appeals and

remands to address arguments that should have been raised earlier. *Fleishman*, 698 F.3d at 608. In sum, "[w]aiver doctrine rests on concerns about fair notice and the proper roles of the trial and appellate courts in our adversarial system," *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022), and it is "critical to the proper functioning of our judiciary," *Wheeler*, 891 F.3d at 1073.

Lighthouse Tabernacle urges us not to find waiver because nothing in the record suggests that its former counsel made a strategic choice to omit the argument now advanced on appeal. As the church sees things, Smith's performance was so poor—in this case and others—that we should assume he was incapable of making a tactical decision to forgo an argument under *Pirtle* and *Nakoa*.

We have at times framed waiver in terms of "strategic" choice, *see, e.g.*, *Bourgeois v. Watson*, 977 F.3d 620, 630 (7th Cir. 2020), but Lighthouse Tabernacle's reasoning reflects a misunderstanding of what that language means for purposes of the waiver doctrine. When a litigant selects among possible arguments at summary judgment, the normal consequence is that he waives those not advanced. Whether the choices were misguided is irrelevant. In other words, "[t]hat the strategy was not entirely successful … does not mean that it was not a strategy." *United States v. Picardi*, 950 F.3d 469, 475 (7th Cir. 2020). Nor do we require evidence that a litigant or his lawyer actually considered an argument before failing to raise it—evidence that will rarely exist. Here, Lighthouse Tabernacle "decided how to litigate its case, offered the district court nothing at all on an entire theory of the defendant['s] case, and predictably lost." *Soo Line R.R. v. Consol. Rail Corp.*, 965 F.3d 596, 602 (7th Cir.

2020). That's a textbook waiver of the new argument it presses on appeal.

There's another problem with Lighthouse Tabernacle's view of the line between waiver and forfeiture. If waiver required us to find (or construct) a good or even neutral strategic reason for omitting the argument below, then waiver would rarely if ever apply. We reiterate, then, that when a party in a civil case exercises judgment by advancing certain arguments at the expense of others in the district court, he waives the arguments not raised. Lighthouse Tabernacle waived its argument that it was relieved of its contractual obligation to promptly repair or replace the damaged property as a prerequisite to receiving replacement-cost proceeds.

We add for the sake of completeness that even if the church's new argument were merely forfeited rather than waived, we would not review it. To repeat, plain-error review in civil cases is reserved for rare cases in which the proponent has demonstrated "exceptional circumstances" affecting his "substantial rights" such that refusing to review and correct the claimed error will cause a "miscarriage of justice." *Henry*, 969 F.3d at 786 (quotation marks omitted).

This demanding standard will seldom be met, and for good reason. Limiting review of forfeited issues serves many of the interests that waiver doctrine serves. And it makes sense for the limitations on plain-error review to be more stringent in civil cases. We have long recognized that "a party who chooses his counsel freely"—as Lighthouse Tabernacle did—"should be bound by his counsel's actions." *Deppe v. Tripp*, 863 F.2d 1356, 1360 (7th Cir. 1988); *see Link v. Wabash R.R.*, 370 U.S. 626, 633–34 (1962) (explaining that

permitting a party to "avoid the consequences of the acts or omissions of [his] freely selected agent" is "wholly inconsistent with our system of representative litigation"). This principle is particularly strong in civil cases, which—unlike criminal cases—rarely implicate "substantial liberty interests." *In re Under Seal*, 749 F.3d 276, 286 n.13 (4th Cir. 2014) (quoting *Deppe*, 863 F.2d at 1364). A civil litigant can also "sue for malpractice if his counsel's work is bad enough," which is "an option that rings hollow for criminal defendants." *SEC v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015); *see Deppe*, 863 F.2d at 1360 ("[A] party may institute an independent action against the trial attorney whose omission(s) rendered the issue(s) unappealable.").[2]

Moreover, civil plain-error review is a judicially created remedy, so "it should be narrowly construed." *In re Under Seal*, 749 F.3d at 286 n.13. As we've noted, there is no civil counterpart to Criminal Rule 52(b). *See Deppe*, 863 F.2d at 1360 ("The conspicuous absence of a plain error doctrine provision in the Federal Rules of Civil Procedure leads us to believe that a plain error doctrine ordinarily is not available in civil litigation."). The Federal Rules of Evidence and the civil-procedure rules provide for plain-error review of some unpreserved objections, but these are exceptions that highlight the absence of a general plain-error rule for civil litigation. *See Walker v. Groot*, 867 F.3d 799, 802 (7th Cir. 2017); *see*

---

[2] We do not address here the many doctrines that apply to preservation and presentation of issues in habeas corpus cases in federal court, including exhaustion of state remedies, fair presentment to state courts, procedural default, and exceptions for "cause and prejudice" and actual innocence, all of which are the subjects of specific statutes and extensive case law.

*also* FED. R. CIV. P. 51(d)(2) (providing for plain-error review of unpreserved objections to jury instructions); FED. R. EVID. 103(e) (same for rulings on the admission or exclusion of evidence).

Lighthouse Tabernacle offers several reasons why plain-error review is warranted. The church contends that without review, Church Mutual will reap an unjustified win. It also emphasizes that its new argument under *Pirtle* and *Nakoa* raises a pure question of law and that Smith's poor performance as counsel creates exceptional circumstances. These contentions do not satisfy the demanding standard for accessing civil plain-error review.

Lighthouse Tabernacle's first argument boils down to a claim of unfairness because the church thinks it has a slam-dunk argument under *Pirtle* and *Nakoa*. This contention vastly overstates the strength of the argument, which is far from compelling and straightforward. *Pirtle* and *Nakoa* involved insurers that delayed *all* payments—even actual cash value payments—until it was impossible (or at least nearly impossible) for the insured to begin repairs. *See Pirtle*, 911 N.E.2d at 66 (describing how the insurer placed the insured "in a very bad position to start any repairs" by not making an actual cash value offer under the relevant policy provision until "after the mortgage foreclosure process had started … and the property had been condemned"); *Nakoa*, 963 N.E.2d at 1133 ("[I]t seems unreasonable and unrealistic for [the insurer] to have expected [the insured] to begin reconstruction … when [the insurer] never paid anything to her towards her real property loss—not the actual cash value of the loss, not replacement cost, nothing at all.").

This case is not at all similar. Church Mutual paid almost $1.7 million, representing the actual cash value of the loss and other undisputed amounts, yet Lighthouse Tabernacle did not even begin to repair or replace its property before it filed suit—not because it was impossible to do so but because the church decided to wait and see if it could recover more for the new ceiling, just one component of the project.

We raise this point not to say that one side has a better understanding of Indiana insurance law. The material point is that that the issue is debatable, which shows that this is an ordinary, garden-variety insurance dispute. There is nothing exceptional about it.

Lighthouse Tabernacle's second contention—that we should review the new argument because it presents a pure question of law—fares no better. For support the church points to some of our older cases in which we reviewed unpreserved arguments presenting legal questions. *See, e.g.*, *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993).

But legal arguments do not have some talismanic quality that exempts them from the normal rules governing the preservation of arguments for appeal. On the contrary, "[a] question of law is not an express ticket to the court of appeals that permits passing by the district court." *Soo Line R.R.*, 965 F.3d at 601. As we have explained, "*legal contentions* must be presented in the district court … before the district judge acts, rather than as afterthoughts." *Builders NAB LLC v. FDIC*, 922 F.3d 775, 778 (7th Cir. 2019) (emphasis added); *see Mahran*, 12 F.4th at 713 ("[A] party opposing … summary judgment … must inform the trial judge of the reasons, *legal*

*or factual*, why summary judgment should not be entered." (emphasis added) (quotation marks omitted)).

We've observed that litigants who "do not do their legal research until after losing in the district court have wasted a judge's valuable time," *Builders NAB*, 922 F.3d at 778, just like litigants who fail to develop the facts until appeal. Reviewing unpreserved legal arguments also deviates from the "significant but limited job of our appellate system," which is "to correct errors made by the district court in assessing the legal theories presented to it, not to serve as a second-shot forum" for "back-up theories" of the case. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (quotation marks omitted). That's why we rarely review unpreserved arguments, whether legal or factual, in the civil context.

Finally, Lighthouse Tabernacle takes aim at its former counsel, arguing that Smith's particularly shoddy performance was so substandard that plain-error review is warranted. But errors by counsel—even egregious errors—do not alone constitute exceptional circumstances. Lawyers make mistakes all the time, so more is needed to justify plain-error review under the civil version of the doctrine. If omitting the *Pirtle/Nakoa* argument was as big a mistake as Lighthouse Tabernacle says, then the church's recourse is a malpractice suit—not an exemption from the principle that plain-error review "is rarely applied in civil cases." *Jackson v. Parker*, 627 F.3d 634, 640 (7th Cir. 2010).

AFFIRMED